STATE of Iowa, Appellee,

v.

Gerald A. RIEFLIN, Jr., Appellant.

No. 96–750.

Supreme Court of Iowa.

Dec. 18, 1996.

Alfredo Parrish of Parrish, Kruidenier, Moss, Dunn & Montgomery, Des Moines, for appellant.

Thomas J. Miller, Attorney General, Sheryl A. Soich, Assistant Attorney General, and Denver D. Dillard, County Attorney, for appellee.

Considered by HARRIS, P.J., and CARTER, NEUMAN, SNELL, and ANDREASEN, JJ.

ANDREASEN, Justice.

Defendant, Gerald Rieflin, was charged with first-degree murder and attempted murder. We hold that the district court did not err in finding Rieflin competent to stand trial. We also hold that the court did not violate Rieflin's physician-patient privilege by allowing the testimony of a doctor and nurse at the second competency hearing. We affirm.

## I. Background Facts and Proceedings.

In January 1995, Rieflin shot and killed two co-workers and wounded two other co-workers at the Ralston Foods plant in Cedar Rapids, Iowa. The shootings occurred in the presence of numerous onlookers. Rieflin was charged with two counts of first-degree murder, in violation of Iowa Code sections 707.1 and 707.2 (1993), and two counts of attempted murder, in violation of Iowa Code sections 707.11 and 902.7.

In February, following Rieflin's request for a medical evaluation at State expense, psychologist Dan Rogers examined him. Upon completion of his evaluation, Rogers prepared a psychological assessment report. In his report, Rogers concluded that Rieflin suffered from paranoid schizophrenia and, at that time, was incapable of assisting in his own defense. At a hearing on July 25, the district court held that, based upon Roger's report, there should be a hearing to determine Rieflin's competency to stand trial. The court ordered him to be evaluated at the Iowa Medical and Classification Center in Oakdale. On August 16, Rieflin filed a notice of defense of insanity and diminished responsibility. *See* Iowa R.Crim. P. 10(11)(b)(1).

Rieflin remained at Oakdale for an extended period and was evaluated and treated by psychiatrist R.T. Lara and clinical director P.L. Loeffelholz. They also diagnosed Rieflin as paranoid schizophrenic but found him competent to stand trial. At the competency hearing in December, defense counsel stated that as long as Rieflin is on medication that is administered properly, he is able to communicate and assist with his defense. Following the hearing, the district court concluded that Rieflin was competent to stand trial. The court relied, in part, on Lara's report, which stated:

> [Rieflin] does not have any intrusive mental condition which would prevent him from fulfilling the criteria established by the [Iowa] Code. Despite his diagnosis, he knows what he is charged with, knows the proceedings as explained to him, can meaningfully cooperate with counsel in his own defense, and can enter a thoughtful plea of his choosing.

In January 1996, Rieflin was evaluated by a psychiatrist of his own choosing, Dr. William Logan. After spending approximately three hours with him, Logan concluded that Rieflin was paranoid schizophrenic and incompetent to stand trial. Specifically, Logan stated that Rieflin continues to have delusions which affect his perception of the legal proceedings, and that his antipsychotic medication was not adequate to control his symptoms. Rieflin then requested another competency hearing, which was held on April 12.

At this hearing, Logan's report was admitted into evidence. Also, the State presented the testimony of three witnesses: Nurse Jan Dolley, Dr. Mark Pospisil, and Sergeant John Hrmidko. The district court again issued an order, finding Rieflin competent to stand trial. The court stated:

> There simply is no evidence presented in the record that the defendant is incapable of effectively assisting in his own defense. The only intellectual problem attributed to the defendant is his belief that he will be subject to attack by demons and that the deity will intervene in his behalf with the jury. The defendant's own expert acknowledges that the defendant's cognitive capacity is intact and that he understands that he is charged with murder and that he is at the Linn County Jail and that he understands the roles of the different participants in the proceeding. There is no indication that the defendant's recollection of the events which form the basis of the charge is impaired. In summary, there simply is no evidence that the defendant's mental condition has changed in any respect since the last time an order was entered concerning the defendant's competency.

Another hearing was held on April 26, during which defense counsel made a professional statement expressing his belief that Rieflin was incompetent. In its order, the district court denied Rieflin's motion to reconsider the prior ruling on competency and denied Rieflin's motion to change the judge. On May 9, we granted Rieflin's application for discretionary review and stayed all further proceedings in the district court.

On appeal, Rieflin argues that the district court erred in ruling he is competent to stand trial, and that the court violated his physician-patient privilege by allowing the testimony of Dolley and Pospisil at the second competency hearing.

II. *Scope of Review.*

██ Our scope of review is for the correction of errors at law. Iowa R.App. P. 4. We are bound by the district court's findings of fact if they are supported by substantial evidence. Iowa R.App. P. 14(f)(3). We do

not review the evidence de novo where a determination of competency has been made by the district court. *State v. Jackson*, 305 N.W.2d 420, 425 (Iowa 1981); *see State v. Aswegan*, 331 N.W.2d 93, 95 (Iowa 1983). Therefore, our inquiry is limited to whether there is support in the record for the competency finding. *Jackson*, 305 N.W.2d at 425; *State v. Rhode*, 503 N.W.2d 27, 34 (Iowa App.1993). We only review the record de novo where no competency hearing is held below, and we are examining the propriety of the district court's determination that no hearing was necessary. *Jackson*, 305 N.W.2d at 425; *see also State v. Mann*, 512 N.W.2d 528, 531 (Iowa 1994); *State v. Edwards*, 507 N.W.2d 393, 395 (Iowa 1993); *Jones v. State*, 479 N.W.2d 265, 270 (Iowa 1991).

■ Further, with respect to Rieflin's claim involving the physician-patient privilege, we review a district court's interpretation of Iowa Code section 622.10 for errors of law. *Chung v. Legacy Corp.*, 548 N.W.2d 147, 149 (Iowa 1996).

### III. *Rieflin's Competency to Stand Trial.*

Rieflin's first argument is that expert psychiatric testimony establishes that he is, at this stage in the proceedings, more likely than not incompetent to stand trial, and that the district court's ruling to the contrary is erroneous. We disagree.

■ The criminal trial of an incompetent defendant violates due process. *Cooper v. Oklahoma*, — U.S. —, —, 116 S.Ct. 1373, 1376, 134 L.Ed.2d 498, 506 (1996); *Edwards*, 507 N.W.2d at 395. In *Cooper*, the Supreme Court stated:

Competence to stand trial is rudimentary, for upon it depends the main part of those rights deemed essential to a fair trial, including the right to effective assistance of counsel, the rights to summon, to confront, and to cross-examine witnesses, and the right to testify on one's own behalf or to remain silent without penalty for doing so.

*Cooper*, — U.S. at —, 116 S.Ct. at 1376, 134 L.Ed.2d at 506 (quoting *Drope v. Missouri*, 420 U.S. 162, 171–72, 95 S.Ct. 896, 903–04, 43 L.Ed.2d 103, 113 (1975)). The

basic test for competence to stand trial is whether the defendant has the present ability to understand the charges against him or her and communicate effectively with defense counsel. *Id.* at —, 116 S.Ct. at 1384, 134 L.Ed.2d at 515; *Mann*, 512 N.W.2d at 531.

■ There is a presumption that a defendant is competent to stand trial, and a defendant has the burden of proving his or her incompetence by a preponderance of the evidence. *Cooper*, — U.S. at —, 116 S.Ct. at 1377, 134 L.Ed.2d at 506; *Mann*, 512 N.W.2d at 531. If the evidence is in equilibrium, the presumption of competency prevails. *Jones*, 479 N.W.2d at 270. Further, once a defendant is found competent, the presumption of competency continues until contrary evidence is produced. *Aswegan*, 331 N.W.2d at 96.

If a defendant's competency comes into question, Iowa Code section 812.3 provides the procedure a district court must follow. *Edwards*, 507 N.W.2d at 395. The statute provides:

If at any stage of a criminal proceeding it reasonably appears that the defendant is suffering from a mental disorder which prevents the defendant from appreciating the charge, understanding the proceedings, or assisting effectively in the defense, further proceedings must be suspended and a hearing had upon that question.

Iowa Code § 812.3.

■ In other words, Iowa Code section 812.3 requires a competency hearing if the record contains information from which a reasonable person would believe a substantial question of defendant's competency exists. *Mann*, 512 N.W.2d at 531. We have stated that the relevant factors in determining whether a section 812.3 hearing should be held include (1) defendant's irrational behavior, (2) any demeanor at trial that suggests a competency problem, and (3) any prior medical opinion on the defendant's competency to stand trial. *Edwards*, 507 N.W.2d at 395; *State v. Myers*, 460 N.W.2d 458, 460 (Iowa 1990).

■ In applying these factors, the district court judge must decide whether the defendant has a present ability to (1) appreci-

ate the charge, (2) understand the proceedings, and (3) assist effectively in the defense. Iowa Code § 812.3; *Edwards*, 507 N.W.2d at 395. A history of mental illness, standing alone, does not mean the defendant is incompetent. *Edwards*, 507 N.W.2d at 395.

██ We believe substantial evidence supports the district court's ruling that Rieflin is competent to stand trial. Rogers was the first person to examine Rieflin, and he diagnosed Rieflin with paranoid schizophrenia and depression. Despite Rieflin's mental problems, Rogers noted in his psychological assessment report that Rieflin answered questions in a forthright manner, was of average intelligence, and scored well above average in the area of abstract, verbal reasoning.

Lara and Loeffelholz were the next persons to evaluate Rieflin. They performed various tests and examinations at Oakdale and gave him drug therapy for his anxieties and depression. In their report, Lara and Loeffelholz concluded Rieflin was competent to stand trial, stating:

He was fully oriented, coherent and relevant, with detached and flat affect.... On psychological testing he scored a full scale IQ of 115, placing him in the high average range.... Testing administered during this admission revealed that he followed conversations in a logical and coherent way, nor was he confused or disoriented.

Finally, Rieflin sought a psychiatric evaluation from Logan. Logan concluded that Rieflin was incompetent to stand trial, stating that he continues to have delusions which affect his perception of the legal proceedings. For example, Logan said that Rieflin believes that "demons will attack him but that the jurors will be swayed by the power of God." Despite those statements, Logan testified that Rieflin "... knew the charges that he was facing, he knew the possible penalties, [and] he generally knew the roles of the various officers of the court." Logan also testified that Rieflin generally knows what is happening, he is able to answer questions, and he remembers what happened during the shooting.

In addition to those evaluations, the district court judge also heard the testimony of three State witnesses at the second competency hearing. Dolley, the health services administrator at the Linn County Jail, testified that she had been acquainted with Rieflin for over one year and had spoken to him nearly every day she worked. Her observations of Rieflin lasted anywhere from five to thirty minutes each day. Based on her training in psychology and psychiatry, Dolley stated that she had not observed any bizarre behavior by Rieflin since his return from Oakdale, and she had not seen any indication that Rieflin was suffering from delusions.

Pospisil, the medical director at the Linn County Jail, testified that his only contact with Rieflin occurred when he lowered Rieflin's medication level. He stated that he had never met Rieflin. Pospisil testified that he had no reason to believe that Rieflin's medication level was inappropriate.

The third State witness was Hrmidko, a deputy sheriff at the Linn County Jail. As day shift supervisor, Hrmidko was responsible for reviewing almost everything that occurred on his shift. He testified that there had been no reports of bizarre behavior or delusions by Rieflin.

To conclude, the district court did not err in finding Rieflin competent to stand trial. Two competency hearings were held, and each time Rieflin was found to be competent. At the hearings, the district court judge relied on the reports and the testimony of several individuals in concluding that Rieflin could appreciate the charges, understand the proceedings, and assist effectively in his defense.

IV. *Rieflin's Physician–Patient Privilege.*

Rieflin's second argument is that the district court violated his physician-patient privilege by relying on the testimony of Dolley and Pospisil. In response, the State argues that Rieflin waived any such privilege by placing his competency in issue. We agree.

██ Iowa Code section 622.10 provides that no physician or physician's assistant may testify with respect to "... any

confidential communication properly entrusted to the person in the person's professional capacity, and necessary and proper to enable the person to discharge the functions of the person's office. . . ." The physician-patient privilege is strictly statutory; there is no common law privilege. *State v. Cole,* 295 N.W.2d 29, 32 (Iowa 1980). The purpose of the privilege is to promote uninhibited and full communication between patient and physician, in order for the physician to obtain the information necessary to competently diagnose and treat a patient. *Chung,* 548 N.W.2d at 149.

For the privilege to exist, three conditions must be satisfied: (1) the relationship of physician-patient; (2) the acquisition of information during the relationship; and (3) the necessity and propriety of the information to enable the physician to treat the patient skillfully. *State v. Eldrenkamp,* 541 N.W.2d 877, 881 (Iowa 1995).

■ The statutory physician-patient privilege does not attach when a defendant gives notice of the defense of insanity or diminished responsibility. *State v. Rhomberg,* 516 N.W.2d 803, 808 (Iowa 1994); *State v. Craney,* 347 N.W.2d 668, 672 (Iowa 1984); *Cole,* 295 N.W.2d at 35. The reasoning for waiver of the privilege under such circumstances is simple. In *Cole,* we stated:

> We believe the defense of diminished capacity waived the privilege here, even if it had existed, for the simple reason *it would be incongruous to allow a party to put a matter in issue and then deny access of an opposing party to relevant information concerning it.* Our modern concept of criminal trials favors full disclosure of facts, within constitutional limitations, on both sides of the table. . . . Even the most restrictive authorities would say [defendant] would have waived the privilege by introducing evidence on it. . . .

*Cole,* 295 N.W.2d at 35 (citations omitted) (emphasis added).

Other authorities support waiver of the privilege under such circumstances. *See* 1 Kenneth S. Broun et al., *McCormick on Evidence* § 103, at 384 (John W. Strong ed., 4th ed.1992) [hereinafter *"McCormick on Evidence"*] (policy considerations support a finding of waiver when the patient has voluntarily placed his condition in issue in a judicial proceeding); 8 J. Wigmore, *Evidence* § 2388, at 855 (McNaughton rev. ed.1961) (waiver may occur when the conduct places the claimant in such position, with reference to the evidence, that it would be unfair and inconsistent to permit retention of the privilege); 81 Am.Jur.2d *Witnesses* § 468, at 413–14 (1992); *McCormick on Evidence* § 134, at ___ ("[I]t is arguable that by asserting incompetency to stand trial or nonliability by reason of insanity the accused has, to a limited extent at least, waived his right to rely on his privilege in regard to those matters.").

■ Further, Iowa Code section 622.10 has a "patient-litigant exception." *See Chung,* 548 N.W.2d at 150–51 (where we discussed the exception, even though it did not apply in that case). This exception abrogates the physician-patient privilege when the condition of a person is an element or factor of the claim or defense of the person claiming the privilege. Iowa Code § 622.10; *see Chung,* 548 N.W.2d at 150. As we noted in *Chung:*

> The exception will not inhibit communication between a patient and his doctor because the patient knows his statements will remain confidential unless *he affirmatively and voluntarily* chooses to reveal them by raising his condition as an element or factor of any claim or defense *the patient makes.*

*Chung,* 548 N.W.2d at 151.

■ Based on our prior cases and the "patient-litigant exception," we conclude Rieflin waived any physician-patient privilege. Rieflin gave notice that he intends to rely on the defense of insanity and diminished responsibility, yet he wishes to exclude the testimony of Dolley and Pospisil. Iowa Code section 662.10 clearly was not intended to allow such a result. Rieflin's mental condition is not just an element or factor of his defense; it is the entire basis for his defense. The privilege is not designed as a shield behind which a patient can conceal information. *Eldrenkamp,* 541 N.W.2d at 881.

**AFFIRMED.**