# IN THE COURT OF APPEALS OF IOWA

No. 16-0550
Filed June 7, 2017

**STATE OF IOWA,**
  Plaintiff-Appellee,

**vs.**

**EDWARD A. CAMPBELL,**
  Defendant-Appellant.
_____

Appeal from the Iowa District Court for Scott County, Henry W. Latham II, Judge.

Edward Campbell appeals his conviction, judgment, and sentence following a jury trial and verdict finding him guilty of first-degree burglary and second-degree criminal mischief.  **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Mary K. Conroy, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Benjamin Parrott, Assistant Attorney General, for appellee.

Heard by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**VAITHESWARAN, Presiding Judge.**

Edward Campbell came to the apartment of acquaintance Durrell Parks, who was watching a movie with his uncle, Atrice Chaptman. Campbell opened the door, entered without Parks' permission, and hit Parks. Chaptman heard the commotion and "football-tackled" and "body-slammed" Campbell, who he had known for several years. Chaptman eventually released Campbell, and Campbell left.

Minutes later, Chaptman saw Campbell breaking the windows of his vehicle with "some bricks or something." Chaptman called 911.

Campbell was arrested and charged with (1) first-degree burglary, (2) second-degree criminal mischief, and (3) assault causing bodily injury. An attorney was appointed to represent him.

In the ensuing months, Campbell filed a plethora of motions, including a belated motion questioning his competency to stand trial and motions to represent himself, one of which was granted. Campbell represented himself through part of the trial, with stand-by counsel present. After trial, the jury found him guilty as charged. The district court imposed sentence, and this appeal followed.[1]

Campbell contends (1) he was not competent to stand trial and the district court's failure to order a competency evaluation violated his due process rights; (2) the district court should not have concluded he was competent to represent himself; (3) in the alternative, he was denied his constitutional right to self-

---

[1] The court concluded the assault causing bodily injury count merged with the burglary count.

representation early in the proceedings; (4) the district court erred in admitting hearsay evidence; and (5) the district court violated his due process rights by excluding certain witness testimony.

## I.      *Competency to Stand Trial*

"The trial of an incompetent defendant in a criminal matter violates the defendant's due process rights . . . ."  *State v. Lyman*, 776 N.W.2d 865, 871 (Iowa 2010) (citing *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996)), *overruled on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 708, n.3 (Iowa 2016).  If the defendant "alleges specific facts showing that the defendant is suffering from a mental disorder which prevents the defendant from appreciating the charge, understanding the proceedings, or assisting effectively in the defense, the court shall suspend further proceedings and determine if probable cause exists to sustain the allegations."  Iowa Code § 812.3(1) (2015).[2]   In addition,

> The court may on its own motion schedule a hearing to determine probable cause if the defendant or defendant's attorney has failed or refused to make an application under this section and the court finds that there are specific facts showing that a hearing should be held on that question.

*Id.*

The competency issue arose as follows.   On the third day of trial, Campbell's stand-by attorney filed a "Motion to Determine Competency Pursuant

---

[2] Campbell cites the following factors for determining competency: "(1) the defendant's apparent irrational behavior, (2) any other demeanor that suggests a competency problem, and (3) any prior medical opinion of which the court is aware."  *State v. Mann*, 512 N.W.2d 528, 531 (Iowa 1994) (citations omitted).  These factors are considerations underlying the overarching inquiry set forth in section 812.3(1).  *See State v. Rieflin*, 558 N.W.2d 149, 152-53 (Iowa 1996), *overruled on other grounds by Lyman*, 776 N.W.2d at 872-73); *accord State v. Edwards*, 507 N.W.2d 393, 395 (Iowa 1993).

to I.C.A. § 812.3." The district court "suspend[ed] the proceedings" to address the motion. Campbell explained he had not been receiving his "meds at the proper time." He stated he was "struggling from anxiety," had been "diagnosed with a mental illness," and was "hearing things [and] seeing things." He asked for a psychological examination to determine if he was competent to stand trial.

The court found Campbell had "been very competent in handling [his] affairs," was responding to inquiries and statements made by the judge and prosecutor, and "fully underst[oo]d exactly what [was] happening" on that day and on previous days in the courtroom. The court declined to order a psychological examination.

Closing arguments ensued. Campbell voiced numerous objections to the State's closing argument and subsequent rebuttal. His argument was lengthy; he addressed the jury instructions, witness credibility, and the relief he was seeking. After the jury found Campbell guilty, he raised his claimed lack of competency again, asserting that he had been diagnosed with schizophrenia and was hospitalized for psychiatric issues as a child. He also asserted he had received "bad meds." At sentencing, the district court denied all pending motions.

On appeal, Campbell again asserts he "was not competent to stand trial." In his view, the district court (1) had a duty to order a competency hearing sua sponte, (2) should have suspended proceedings and ordered a competency evaluation after his mid-trial motion to determine competency, and (3) should have ordered an evaluation after a verdict was reached but prior to sentencing. Our review is de novo. *Lyman*, 776 N.W.2d at 873.

The record evinces odd, disruptive, and sometimes irrational behaviors on Campbell's part. But these types of behaviors do not necessarily equate with incompetency to stand trial. *See Edwards*, 507 N.W.2d at 395-97 (describing a defendant's disruptive and aggressive behavior and concluding he was competent to stand trial); *see also State v. Rhodes*, No. 11-0812, 2012 WL 5536685, at *7 (Iowa Ct. App. Nov. 15, 2012) (concluding a defendant's strange behavior was a result of "her unwillingness to accept the fact she was being prosecuted and the fact the court had jurisdiction over her"). As noted, Campbell had to establish he had a mental disorder that prevented him "from appreciating the charge, understanding the proceedings, or assisting effectively in the defense." Iowa Code § 812.3; *accord Rieflin*, 558 N.W.2d at 152-53; *Edwards*, 507 N.W.2d at 395. His behaviors reflected quite the opposite: a calculated strategy to delay or derail the proceedings. *See Lyman*, 776 N.W.2d at 874 ("We presume a defendant is competent to stand trial," and the defendant carries the burden to prove otherwise by a preponderance of the evidence).

For example, at a hearing on pending motions, Campbell asked the court whether the prosecutor was the devil, a question that might have triggered alarm bells if heard out of context. However, the question came after an exchange in which Campbell (1) said he was competent to represent himself, (2) cogently discussed prior legal proceedings in which he was involved, (3) requested evidentiary depositions, (4) raised a previously-filed motion for change of venue, (5) mentioned the maximum sentence on one of the charges, (6) criticized the court for not overseeing the county attorney's office, and (7) asked the court about the rejection of a conflict-of-interest claim.

The claimed conflict of interest he asserted underscores Campbell's ability to understand the proceedings and mount a defense. Campbell filed pretrial motions accusing the prosecutor of sexually abusing and harassing him. Without any formal legal training, Campbell explained the prosecutor should not have been assigned to this case in light of his prior relationship with her, a relationship the prosecutor vehemently denied. He also asserted the assignment amounted to "a big conflict." He recognized an allegation of this nature, if proven, could stall the proceedings.

Campbell's colloquy with the court on his request to represent himself also highlighted his ability to appreciate the charges, understand the proceedings, and not merely assist in his defense, but execute his defense. He knew the penalties associated with the offenses, understood the duties he would assume if his request for self-representation were granted, and as discussed below, expressed uncommon knowledge of the law and legal process. *Cf. Edwards*, 507 N.W.2d at 396 ("[I]t is plain to us that Edwards appreciated the seriousness of the charge and understood the proceedings. He left no doubt that he was going to take an active role in his defense and in no uncertain terms explained why.").

We acknowledge some references to Campbell's history of mental illness. For example, at a pretrial conference, Campbell asserted: "Sir, I'm not understanding what's going on right now and I haven't been taking my medicine," and he additionally stated: "Like I told you, I haven't been taking my medicine. I'm sick, sir, and I don't know what's going on." Yet, Campbell also attested, "I've gotten recommendation from independent counsel to refuse psych," stated he previously had a psychological evaluation, which concluded he was competent to

stand trial, and noted that he had not been taking a particular medicine but the medication was only for anxiety, not "because of mental," and he had his anxiety "under control." *See Rieflin*, 558 N.W.2d at 153 ("A history of mental illness, standing alone, does not mean the defendant is incompetent."); *cf. Edwards*, 507 N.W.2d at 398 (stating defendant "knows he has a mental impairment and uses it to . . . extricate himself from legal difficulties"). As the State observed, "What appears irrational in the abstract may prove wily with the proper frame of reference." Campbell's discerning comment that "[t]his is not a tactic, Your Honor, it's an illness," lends credence to the State's observation. We conclude the trial references to Campbell's mental illness did not furnish probable cause to further suspend the proceedings and order a competency evaluation.

We are left with Campbell's post-trial request for a competency evaluation. The court denied the request on the ground that "[t]he purposes of competency is during the pendency of trial." Campbell is correct that Iowa Rule of Criminal Procedure 2.23(3)(c) requires a court to defer entry of judgment "[i]f it reasonably appears to the court that the defendant is suffering from a mental disorder which prevents the defendant from appreciating or understanding the nature of the proceedings or effectively assisting defendant's counsel . . . ." Accordingly, the fact that Campbell filed his motion after trial was not grounds for denying it.

That said, the sentencing record underscores Campbell's keen understanding of those proceedings and his ability to advocate for himself. Campbell asked the court to delay sentencing, sought leniency in sentencing, and requested concurrent sentences, a request the court granted. There was no evidence Campbell's claimed diagnosis of schizophrenia, his childhood

hospitalization, or his "bad meds" prevented him from appreciating the sentencing proceedings.

On our de novo review, we conclude the district court acted appropriately in declining to schedule a competency hearing sua sponte and in finding Campbell competent to stand trial and competent to participate in sentencing.

## II. Campbell's Competency to Represent Himself

The Sixth Amendment to the United States Constitution affords a defendant a right of self-representation. *Faretta v. California*, 422 U.S. 806, 821 (1975).

> When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent oneself, an accused must 'knowingly and intelligently' forgo those relinquished benefits.

*Id.* at 835 (citations omitted). The court must engage in a "meaningful colloquy" to determine whether a waiver of counsel is "competent and intelligent." *State v. Cooley*, 608 N.W.2d 9, 15 (Iowa 2000).

Campbell argues, "In the event the Court determines [he] was competent to stand trial, the district court erred by allowing [him] to represent himself because he lacked the mental capacity to conduct a defense without counsel's representation." He contends, "[T]he level of ability needed to represent oneself is much greater than the level of ability for one to stand trial with counsel."

The State responds the standard for competency to represent oneself is the same as the standard for competency to stand trial and "[b]ecause [Campbell] was competent to stand trial . . . he was also competent to waive his right to counsel and to exercise his constitutional right to represent himself." Two

relatively recent opinions speak to the question of whether the standard to establish competency to represent oneself is one and the same as the standard to establish competency to stand trial.

In *Indiana v. Edwards*, the United States Supreme Court considered the case of "a criminal defendant whom a state court found mentally competent to stand trial if represented by counsel but not mentally competent to conduct that trial himself." 554 U.S. 164, 167 (2008). The Court asked "whether the Constitution permits a State to limit that defendant's self-representation right by insisting upon representation by counsel at trial—on the ground that the defendant lacks the mental capacity to conduct his trial defense unless represented." *Id.* at 174. The court concluded, "[T]he Constitution permits States to insist upon representation by counsel for those competent enough to stand trial . . . but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves. *Id.* at 177-78. The Court explained, "[T]he nature of the problem before us cautions against the use of a single mental competency standard for deciding both (1) whether a defendant who is represented by counsel can proceed to trial and (2) whether a defendant who goes to trial must be permitted to represent himself." *Id.* at 175. Specifically,

> In certain instances an individual may well be able to satisfy [the federal] mental competence standard, for he will be able to work with counsel at trial, yet at the same time he may be unable to carry out the basic tasks needed to present his own defense without the help of counsel.

*Id.* at 175-76.[3] The court continued,

> [G]iven the different capacities needed to proceed to trial without counsel, there is little reason to believe that [the federal mental competency-to-stand-trial standard] alone is sufficient. At the same time, the trial judge, particularly one such as the trial judge in this case, who presided over one of Edwards' competency hearings and his two trials, will often prove best able to make more fine-tuned mental capacity decisions, tailored to the individualized circumstances of a particular defendant.

*Id.* at 177.

The federal standard for determining competency to stand trial asks whether the subject "has sufficient present ability to consult with [counsel] with a reasonable degree of rational understanding—and whether [the person] has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960). As noted, Iowa frames the test as whether the defendant has a mental disorder that "prevents the defendant from appreciating the charge, understanding the proceedings, or assisting effectively in the defense." Iowa Code § 812.3(1).

After *Edwards*, this court addressed the Iowa standard for competency to stand trial and compared it to the self-representation standard. In *State v. Jason*, the defendant contended "the trial court had a duty, sua sponte, to consider his

---

[3] The Court distinguished this case from *Godinez v. Moran*, 509 U.S. 389, 398 (1993), which "reject[ed] the notion that competence to plead guilty or to waive the right to counsel must be measured by a standard that is higher than (or even different from) the [federal] standard" governing competency to stand trial. *Edwards*, 554 U.S. at 172 (alteration in original) (internal quotation marks omitted). The Court explained *Godinez* involved a guilty plea, whereas Edwards' case involved "the defendant's ability to conduct trial proceedings." *Id.* at 173. The Court also pointed out that *Godinez* "involved a State that sought to *permit* a gray-area defendant to represent himself," whereas Edwards faced the State's request to "*deny* a gray-area defendant the right to represent himself . . . ." *Id.* This second rationale would support the State's argument in this case that *Godinez* rather than *Edwards* holds more sway. For purposes of this opinion, we need not decide which opinion is more persuasive.

mental competency to represent himself at trial even though he had been found competent to stand trial." 779 N.W.2d 66, 73 (Iowa Ct. App. 2009). This court stated the defendant's "competency to stand trial does not equate to competency to represent himself at trial . . . ." *Id.* at 77. The court remanded the case

> to the trial court for a hearing to determine whether it would have denied [the defendant's] right to represent himself at trial in light of the standards established in *Edwards* and subsequent cases that have recognized a constitutional violation when a defendant who is not competent to present his own defense without the help of counsel is allowed to do so.

*Id.* at 76 (footnote omitted).

We will assume without deciding that the standard to establish competency to represent oneself differs from the standard to establish competency to stand trial, in that competency to self-represent also requires a showing of competency to present a defense without the help of counsel. On our de novo review, we are convinced the district court established Campbell's competency to represent himself at trial.

The court engaged in a comprehensive colloquy with Campbell to determine whether his self-representation request was "truly" what he wanted. Campbell said he was thirty-four years old, had an eleventh-grade education, and had never been hospitalized for any mental condition. He stated he previously underwent a psychological evaluation and "the evaluation came back that [he] was competent and nothing was wrong with [him]." He admitted he did not receive his anxiety medication in the morning because he was in trial but stated he had his anxiety "under control." He said he studied "law books" every day, represented himself in a prior court action, participated in a criminal trial in

which he was the defendant, and "learned a whole lot" from that experience. He listed the charges he was facing, recited the incarceration terms for each, explained the meaning of lesser included offenses, and expressed an understanding of the district court's sentencing options. He said he understood stand-by counsel's role and knew how to make objections, present evidence, cross-examine witnesses, and make a motion for judgment of acquittal. He also said he understood "100 percent" that he would have to abide by the rules of evidence. He expressed an understanding of the appeal process and his obligation to preserve error. When the court explained that he may not know when to object to any mistakes the court might make, Campbell responded, "I have confidence that you are a gentleman that wouldn't do nothing that I would have to object to." He then affirmed an understanding of the need to object as a predicate to raising an issue on appeal. At the end of this exchange, the district court informed Campbell he "would be far better served by being represented by a trained lawyer" and that it would be "unwise" to represent himself. Campbell persisted in his request to represent himself.

This extensive colloquy establishes that Campbell waived his right to counsel knowingly and intelligently and was competent to conduct the trial proceedings by himself. *See Faretta*, 422 U.S. at 835; *Jason*, 779 N.W.2d at 75. We affirm the district court's decision to find Campbell competent to represent himself at trial.

**III.     *Pre-Trial Denial of Constitutional Right to Self-Representation***

Campbell next argues he "was denied his constitutional right to represent himself" before trial. On our de novo review, we disagree.

Three months before trial, Campbell filed a pro se motion to represent himself. At a later hearing, Campbell withdrew his motion and advised the court he would proceed with counsel. Plainly, there was no violation of his constitutional right to represent himself at this stage.

Approximately nine weeks before trial, Campbell moved to fire his attorney. He identified another attorney he wished to have appointed as stand-by counsel. The body of his motion simply stated, "I don't trust [counsel]—she don't wanna be on my case anyway." The district court denied the motion and instructed Campbell that his motions should be presented through counsel. The court further stated no action would be taken unless counsel sought a hearing on the motions.

Campbell's second motion was not a clear and unequivocal self-representation request. *See State v. Rater*, 568 N.W.2d 655, 658 (Iowa 1997). But, even if the motion could be construed as an unequivocal request, the district court simply ruled Campbell would have to make the request and seek a hearing through counsel. The court did not foreclose the option of self-representation or decline to pursue the matter if properly raised.

At a pretrial conference two weeks after the second self-representation motion was filed, Campbell reiterated his wish "to fire counsel for being ineffective." He asked "to go pro se and get stand-by counsel." The court advised him he could "address those issues at a [scheduled] motion hearing at a later date." Campbell responded that he simply wanted "proper counsel," and if he could not get that he was "going to go pro se." He repeated, "I don't trust counsel and I'm trying to seek different counsel." After noting Campbell had

demanded a speedy trial, the court again stated the matter would be considered at the motion hearing. While Campbell insists the court should have questioned him immediately about the voluntariness of his decision to waive his right to counsel, we conclude the court's decision to take the matter up at a previously-scheduled motion hearing did not violate his constitutional right to self-representation. *See, e.g., State v. Obermiller*, 63 N.E.3d 93, 104 (Ohio 2016) (noting "the presiding judge did not *deny* [the defendant's] request for self-representation; she merely *postponed* consideration of the request").

Before the motion hearing, Campbell's attorney moved to withdraw, after being advised her court-appointment contract disallowed representation of defendants charged with class "B" felonies. The district court appointed the substitute attorney Campbell had requested. There were no proceedings between the pretrial conference and the motion hearing. *Cf. id.* (recognizing "[n]o substantive proceedings occurred between the presiding judge's discussion with [the defendant] of his self-representation request and the three-judge panel's resumption of the inquiry" and noting "in previous cases in which a trial court held multiple hearings before ruling on a defendant's request for self-representation, we have not found that the court erred in failing to rule immediately on the request").

During the motion hearing, the court discussed what stand-by counsel could and could not do. Campbell decided to keep his substitute attorney rather than proceed on his own. Again, because Campbell withdrew his request to represent himself, there was no violation of the right to self-representation.

At the beginning of trial, Campbell's attorney advised the court Campbell now wished to have him serve in a stand-by capacity and Campbell "would like to handle his own defense from start to finish . . . ." When the court asked Campbell if he agreed with this assertion, Campbell responded that he "would need a ta[d] bit of help with the jury instructions" but would want to handle the opening statement and closing argument himself. The court told Campbell he could not divide up the trial with his attorney and "would have to handle all aspects of the trial" if he wished to represent himself. The court asked Campbell, "[I]s it your desire to represent yourself, then, or not?" The court explained the need to ask "a number of questions" if it was indeed his desire to represent himself. As the court began the colloquy to determine the voluntariness of Campbell's decision to waive his right to an attorney, Campbell "ple[]d the fifth," said he was "done," and stated, "I'm going to let you do your job and I'm going to let my lawyer do his job." The court asked if he was withdrawing his request to represent himself. Campbell responded, he was "not withdrawing anything." Again, he attempted to "plead the fifth." The court stated: "Well, at this time, then, I will determine that you do not desire to represent yourself as you do not wish to go further with the colloquy that is required to represent yourself and [counsel] will proceed in representing you in this matter." Because Campbell stymied the court's efforts to determine whether he was knowingly and intelligently waiving his Sixth Amendment right to counsel, we conclude the court's failure to engage in a complete colloquy at this stage did not amount to a violation of Campbell's right to self-representation.

In sum, there was no pre-trial violation of Campbell's right to self-representation, either because Campbell withdrew his request to represent himself or because he impeded the court in establishing that his waiver of his right to counsel was knowing and intelligent.

## IV.  *Hearsay Evidence*

Hearsay is an out of court "statement" made by the "declarant" that is offered "into evidence to prove the truth of the matter asserted in the statement." Iowa R. Evid. 5.801(c).  The admission of hearsay evidence is prejudicial unless the contrary is shown.  *State v. Dudley*, 856 N.W.2d 668, 675 (Iowa 2014).

At issue is evidence supporting the criminal mischief charge.  To prove second-degree criminal mischief, the State had to establish "the cost of replacing, repairing, or restoring" the damaged vehicle exceeded $1000 but not $10,000.  Iowa Code § 716.4.  The State offered an invoice from the entity that repaired Chaptman's damaged vehicle.  The invoice listed $1321.82 in repair costs before application of the insurance deductible.  The State also elicited testimony from Chaptman about the damage to his vehicle and associated repair costs.  After Chaptman testified he had to replace the windshield, two passenger windows, and the back window, the State asked, "What was the total cost to make those repairs?"  Chaptman responded, "$1300."  Campbell's attorney objected to the invoice on foundational and hearsay grounds and to Chaptman's testimony on hearsay grounds.  The district court overruled his objections.

On appeal, Campbell reprises his argument that the invoice and testimony constituted inadmissible hearsay.  In his view, exclusion of this evidence would require reversal of the jury's finding of guilt on the second-degree mischief

charge. Our review of the hearsay issue is for correction of legal error. *Dudley*, 856 N.W.2d at 675.

We begin with the invoice. The State "concedes [the exhibit] contained an out-of-court statement and was admitted without a foundation establishing any hearsay exception or exclusion." *See* Iowa R. Evid. 5.801(c), 5.802, 5.803(6). The State simply argues any error in admission of the invoice "was harmless" in light of "Chaptman's testimony about the value of the repairs, the photographic evidence of the damage, and the jury's possession of common sense."

"In the hearsay context, 'where substantially the same evidence is in the record, erroneously admitted evidence will not be considered prejudicial.'" *State v. Brown*, 656 N.W.2d 355, 361 (Iowa 2003) (quoting *State v. Sowder*, 394 N.W.2d 368, 372 (Iowa 1986)). We are convinced neither the photographic evidence cited by the State nor the jury's "common sense" could establish the cost of repairs to the vehicle. We are left with Chaptman's testimony about the cost of repairs. We must decide whether the testimony was admissible and whether it amounted to substantially the same evidence as the evidence contained in the inadmissible invoice, so as to render the erroneous admission of the invoice harmless error.

Campbell concedes, "Iowa Courts have typically received value testimony liberally, allowing the weight of the evidence to be determined by the jury." *See State v. Savage*, 288 N.W.2d 502, 504-05 (Iowa 1980) ("The general rule is that an owner may testify as to actual value without a showing of general knowledge of market value."). But, in his view, Chaptman's testimony about the cost of repairs was not based on his personal knowledge about the vehicle but on what

the vehicle insurer told him. The State responds, "It is not facially apparent from Chaptman's answers that" he "relied on an out-of-court-statement" and "[t]o the extent Campbell now argues Chaptman had no personal knowledge of the cost of the repairs apart from his reliance on" the invoice, Campbell failed to preserve error by raising this foundational objection at trial.

We agree with the State that Chaptman's testimony was not necessarily based on an out-of-court statement and, accordingly, the testimony did not implicate the hearsay rule. As for the State's contention that Campbell failed to preserve error on his foundational challenge to Chaptman's testimony, we believe such a challenge was subsumed in his objection. That said, Campbell faces an uphill battle in arguing a vehicle owner cannot testify to the cost of repairing his vehicle.

We addressed a virtually identical issue in *In re W.L.F.*, an appeal of a finding that a juvenile who vandalized a school committed the delinquent acts of third-degree burglary and second-degree criminal mischief. *See* No. 00-0939, 2001 WL 103522, at *1-3 (Iowa Ct. App. Feb. 7, 2001). The juvenile in that case argued the school principal "did not have sufficient personal knowledge to testify to the amount of damage to school property." *W.L.F.*, 2001 WL 103522, at *1. This court disagreed. We concluded the principal "was competent to testify to the value of the damaged property," and the complaints regarding the substance of his testimony on the value of the repairs "should go to the weight of [the] evidence and not its admissibility." *Id.* at *2.

*W.L.F.* is persuasive authority in support of affirming the district court's admission of Chaptman's testimony. If a principal could estimate the cost of

repairing a school, we are convinced Chaptman could estimate the cost of repairing his vehicle. As in *W.L.F.*, he saw the damage and his "testimony was rationally based on [his] perception and knowledge." *Id.* We conclude the district court did not abuse its discretion in admitting Chaptman's testimony about the cost of repairs to his vehicle.

This brings us full circle to the harmless error standard for erroneous admission of the invoice. Having concluded Chaptman's testimony on the cost of repairs was admissible, we further conclude the testimony was duplicative of the invoice contents and rendered the erroneous admission of that invoice non-prejudicial. Accordingly, we decline to reverse Campbell's criminal mischief conviction.

## V.    *Ruling on Motion in Limine*

Prior to trial, Campbell filed a pro se motion in limine, stating, among other things: "I'm not homeless nor a drug dealer, that's irrelevant to this case." Later, he filed another motion in limine asserting evidence that he was a "homeless drug-dealer" was inadmissible. Campbell subsequently withdrew the first motion. With respect to the second, the prosecutor advised the court she viewed this evidence "as being more prejudicial than probative." The prosecutor confirmed "we are not going to go into that." The district court granted the second motion in limine.

At trial, Campbell asked a witness about the excluded information. The prosecutor objected, and the district court sustained the objection. Campbell then sought to withdraw his motion in limine. The district court ruled, "The motion in limine will stand. There will be no questions about drugs or homelessness

during the course of this trial." Campbell moved for a mistrial. The court denied the motion.

On appeal, Campbell argues, "The district court's ruling unlawfully limited [him] and his trial strategy." He asserts he "was entitled to present his defense how he saw fit, regardless of the prejudice it may cause him in the jury's eyes" and the ruling "violat[ed] his constitutional rights."

As a preliminary matter, we conclude Campbell preserved error on the argument he now raises. However, his contention fails on the merits. First, Campbell himself filed the motion to exclude testimony of his homelessness and drug-dealing and he prevailed on the motion. He cannot be heard to complain about a ruling he requested. *See Jasper v. State*, 477 N.W.2d 852, 856 (Iowa 1991) ("Applicant cannot deliberately act so as to invite error and then object because the court has accepted the invitation."). Second, the district court correctly concluded the limited probative value of the evidence was substantially outweighed by the danger of unfair prejudice. *See* Iowa R. Evid. 5.403. Finally, there is scant if any indication that exclusion of this evidence infringed upon Campbell's constitutional right to present a defense. *See State v. Countryman*, 573 N.W.2d 265, 266 (Iowa 1998) ("A defendant's due process right to present evidence in a criminal action does not prevent the court from following evidentiary rules that are designed to assure both fairness and reliability in the ascertainment of guilt and innocence." (quoting *State v. Losee*, 354 N.W.2d 239, 242 (Iowa 1984)); *see also State v. Schondelmeyer*, No. 14-0621, 2015 WL 1817030, at *4 (Iowa Ct. App. Apr. 22, 2015) (rejecting assertion that exclusion of evidence deprived defendant of the constitutional right to present a defense,

reasoning, "The circumstances that have given rise to a finding of such a deprivation . . . are more extreme than those before us now" and "typically involve either the court or the prosecution intimidating a witness until the witness elects not to testify or involve an indigent defendant who is denied funds to prepare a necessary element of his defense").

We affirm the court's rulings on Campbell's second motion in limine and on his mistrial motion.

## VI. Disposition

We affirm Campbell's judgment and sentence for first-degree burglary and second-degree criminal mischief.[4]

**AFFIRMED.**

---

[4] Campbell submitted several pro se appellate filings while this appeal was pending. The supreme court addressed a number of his filings. To the extent his remaining filings attempt to forward additional information not included in the record on appeal, we do not consider them. *See* Iowa R. App. P. 6.801; *In re Marriage of Keith*, 513 N.W.2d 769, 771 (Iowa Ct. App. 1994) ("We are limited to the record before us and any matters outside the record on appeal are disregarded."). To the extent his appellate filings are intended as pro se supplemental briefs, they are denied and stricken because all of his filings were submitted either before, or more than fifteen days after, his counsel filed her proof brief. *See* Iowa R. App. P. 6.901(2)(a). His last filing requests further review if we affirm. That request is denied as premature. *See id.* R. 6.1103(1)(a).