# IN THE COURT OF APPEALS OF IOWA

No. 21-1839
Filed February 8, 2023

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**DARRIEN DARVIN IRVING,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Scott County, John Telleen, Judge.

A defendant appeals his convictions for drug-related offenses and possession of a firearm by prohibited person. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Mary K. Conroy, Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Bridget A. Chambers, Assistant Attorney General, for appellee.

Considered by Tabor, P.J., and Schumacher and Chicchelly, JJ.

**TABOR, Presiding Judge.**

After a three-day trial, a jury convicted Darrien Irving of possessing crack cocaine with the intent to deliver, failing to affix a drug tax stamp, and possessing a firearm as a felon. On appeal, Irving claims the State presented insufficient evidence for his drug-related convictions. He also contends the district court should have ordered a competency hearing.

Viewing the record in the light most favorable to the verdicts, we find substantial evidence that Irving knowingly possessed crack cocaine and intended to deliver it. And the record does not reveal that a reasonable person would have doubted Irving's competence to stand trial or be sentenced. Thus, we affirm the judgments and convictions.

## I. Facts and Prior Proceedings

Driving a marked patrol car in the early morning hours, Davenport police detective Robert Farra noticed a Pontiac Grand Am with no license plates. As Farra followed the Grand Am, it accelerated, running a stop sign. While accelerating, the driver hit a bump in the road and lost control, crashing into a parked truck. Farra stopped his patrol car and activated its overhead lights.

Meanwhile, the Grand Am's driver, the only occupant, crawled out the passenger side. And as he did, he reached back toward the driver's side floorboard. Farra twice ordered the driver to "show me your hands." But the driver looked up and ignored the commands. Instead, the driver fled on foot. Farra pursued the suspect at first but soon lost sight of him. Investigators eventually found a wallet among tall weeds on the driver's retreat route. A temporary driver's

license inside was issued to Irving. Likewise, the wallet held Irving's auto insurance card, social security card, and a MediaCom bill.[1]

When Farra returned to the crashed Grand Am, he spotted a .40 caliber handgun and an LG Tracfone on the driver's side floorboard. He then got search warrants for the Grand Am and the phone. During the warranted search of the car later that day, the detective found a clear plastic bag—tied at the top—inside a compartment in the center console near the dashboard. The bag contained 17.91 grams of crack cocaine. It did not have a tax stamp. Investigators submitted both the bag containing the crack cocaine and the handgun for fingerprinting. But no identifiable prints were found.

In a second warranted search, Farra seized items from the glove box— including a dental appointment card for Darrien Irving. Also in the glove box were papers with different first names: "Dadon Irving" on a dry-cleaning claim tag and "Darvon Irving" on an auto center receipt. The address on the auto center receipt matched the address on Darrien Irving's driver's license.

An extraction of data from the Tracfone found many text messages addressing "Darrien." Davenport Police sergeant Ann Sievert, who has experience and training in narcotics enforcement, testified that many messages contained veiled references to the price and amount of crack cocaine sales.

The State charged Irving with possession with intent to deliver the crack cocaine in violation of Iowa Code section 124.401(1)(c)(3) (2020), failure to affix a

---

[1] When Farra later used the name and birthdate on the identification to access a photograph, he confirmed that Irving was the individual he saw running away from the Grand Am.

drug tax stamp in violation of section 453B.12, and being a felon in possession of a firearm in violation of section 724.26(1). The State also gave notice of sentencing enhancements. A jury found him guilty of all three counts. He waived a jury trial on his habitual offender status. And the district court found that he was a habitual offender under Iowa Code sections 902.8 and 902.9. The court sentenced him to concurrent indeterminate prison terms totaling thirty years, with a mandatory minimum of six years before he is eligible for parole.

## II. Scope and Standards of Review

We review Irving's sufficiency-of-the-evidence claims for correction of legal error. *See State v. Crawford*, 974 N.W.2d 510, 516 (Iowa 2022). We consider the evidence "in the light most favorable to the State," allowing for all reasonable inferences it will support. *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012). If a rational jury could find guilt beyond a reasonable doubt, we affirm. *Id.* While we consider all evidence—exculpatory and inculpatory alike—we are mindful that the jury is "free to reject certain evidence, and credit other evidence." *Id.* (citation omitted).

We review his competency challenge de novo. *See State v. Einfeldt*, 914 N.W.2d 773, 778 (Iowa 2018).

## III. Analysis

## A. Substantial Evidence

Irving claims the State failed to offer adequate proof for his two drug-related convictions: possession of crack cocaine with the intent to deliver and failure to

affix a drug tax stamp.[2]  He contends the State did not show he knowingly possessed the crack cocaine and also failed to prove he had the intent to deliver.

*Possession.*  To convict on a narcotics offense, the State may prove either actual or constructive possession.  *State v. Jones*, 967 N.W.2d 336, 341 (Iowa 2021).  Actual possession is "direct physical control" of the controlled substance.  *Id.*  The evidence shows actual possession when investigators find drugs on the suspect's person *or* the record shows that the suspect had actual possession of the drugs "at one time."  *Id.* (citation omitted).  Constructive possession is "knowledge of the presence of the controlled substance" coupled with "the authority or right to maintain control of it."  *State v. Reed*, 875 N.W.2d 693, 706 (Iowa 2016) (citation omitted).  But evidence showing the defendant had "access to a place where narcotics are found" is not enough alone to show either form of possession.  *State v. Reeves*, 209 N.W.2d 18, 22 (Iowa 1973).

The State can prove constructive possession by indirect evidence, including the suspect's incriminating statements and actions, their fingerprints, and their proximity to the drugs.  *See State v. Webb*, 648 N.W.2d 72, 79 (Iowa 2002).  When, as here, investigators search a car, a factfinder may consider whether: (1) the drugs were in plain view, (2) the drugs were with the suspect's personal effects,

---

[2] For possession with intent, the State needed to prove:

> 1. On or about the 15th day of October, 2020, [Irving] knowingly possessed crack cocaine, a controlled substance.
> 2. [Irving] knew that the substance he possessed was crack cocaine.
> 3. [Irving] possessed the substance with the intent to deliver the controlled substance.

Likewise, for the tax stamp violation, the State needed to show he "knowingly possessed" cocaine.

(3) the drugs were on the same side of the car or next to the suspect, (4) if the suspect owned the vehicle, and (5) any suspicious activity by the suspect. *State v. Kemp*, 688 N.W.2d 785, 789 (Iowa 2004). But these specific factors are just guideposts in our analysis. *Id.* We must weigh all circumstances to determine whether there was a "reasonable inference" that Irving knew the crack cocaine was in the console and had control and dominion over it. *Id.*

Ticking through the *Webb* and *Kemp* factors, Irving notes that although he was right next to the drugs, the drugs were not in plain view. He also made no incriminating statements, and his fingerprints were not on the drugs. He emphasizes that constructive possession cannot rest on proximity alone. *See State v. Cashen*, 666 N.W.2d 566, 573 (Iowa 2003). As for his flight in response to seeing the detective, Irving concedes it was incriminating. But he asserts that the State did not link his suspicious actions to the presence of the drugs in the Grand Am that he was driving. And while he was the driver and sole occupant on the night of the crash, Irving recalls that the State's evidence did not show that he owned the Grand Am. Indeed, the exhibits showed that he was one of several members of his family who used that car.

The State counters that Irving's evasive conduct reflected guilty knowledge. *See State v. Carter*, 696 N.W.2d 31, 40–41 (Iowa 2005) (finding constructive possession when driver failed to stop when signaled by officer, rummaged around the center console, and then exited the vehicle). We agree. Irving did not comply with the officer's command to show his hands, instead trying to retrieve something from the car as he scrambled out of the passenger side. *See State v. Dewitt*, 811 N.W.2d 460, 476 (Iowa 2012) (observing "unreasonable behavior can be relevant"

to finding constructive possession). On top of this evasive behavior, Irving had exclusive control of the Grand Am when it crashed. And his dental appointment card in the glove box suggested this was not his first time using the car.

Viewing all evidence in the light most favorable to the State, we find sufficient proof that Irving was in constructive possession, or was recently in actual possession, of the crack cocaine.

*Intent to Deliver.* Irving next argues that if he did knowingly possess the crack cocaine, the State failed to show that he had the intent to deliver it. He highlights how the police found no baggies or scale in the Grand Am.

"Because it is difficult to prove intent by direct evidence, proof of intent usually consists of circumstantial evidence and the inferences that can be drawn from that evidence." *State v. Grant*, 722 N.W.2d 645, 647–48 (Iowa 2006). Often that circumstantial evidence includes "the manner of packaging drugs, large amounts of unexplained cash, and the quantity of drugs possessed." *Id.* at 648. The State also may offer testimony from police officers with experience in drug enforcement to help the factfinder determine intent to deliver. *Id.*

To that end, Sergeant Sievert testified that the amount of crack cocaine found in the Grand Am was more consistent with distribution than personal use. She explained that a "dosage unit" of crack cocaine was generally a rock weighing one-tenth of a gram, so the bag contained about 190 dosage units. In her estimation, at the street price of $20 per a rock, the bag was worth about $3800. In her opinion, that value was "indicative of sale." Her opinion was not changed by the lack of a scale or baggies. She reasoned that experienced crack dealers can "eyeball a weight" and provide that amount to their customer without pre-

packaging. Sievert also testified that the text messages extracted from Irving's phone pointed to drug dealing.

The jury could have accepted the sergeant's explanation of the volume, packaging, and text messages. *See State v. See*, 532 N.W.2d 166, 169 (Iowa Ct. App. 1995). Again, viewing this evidence in the light most favorable to the State, we find sufficient proof of Irving's intent to deliver. On this record, we decline to disturb the verdicts on possession with intent to deliver or failure to affix a tax stamp.

**B. Competency Hearing**

Due process requires that a district court schedule a hearing to determine competency if the record reveals sufficient doubt of the accused's mental capacity. *State v. Mann*, 512 N.W.2d 528, 531 (Iowa 1994). The purpose of Iowa Code chapter 812 is to implement the court's due process duty. *Id.*

> The court may on its own motion schedule a hearing to determine probable cause if the defendant or defendant's attorney has failed or refused to make an application under this section and the court finds that there are specific facts showing that a hearing should be held on that question.

Iowa Code § 812.3(1) (2021).

Relevant factors in determining whether the court should schedule a section 812.3 hearing include "(1) defendant's irrational behavior, (2) any demeanor at trial that suggests a competency problem, and (3) any prior medical opinion on the defendant's competency to stand trial." *State v. Rieflin*, 558 N.W.2d 149, 152 (Iowa 1996), *overruled on other grounds by State v. Lyman*, 776 N.W.2d 865 (Iowa 2010). In applying these factors, the court "must decide whether the defendant

has a present ability to (1) appreciate the charge, (2) understand the proceedings, and (3) assist effectively in the defense." *Id.* at 152–53.

Irving contends that the court should have questioned his competency when defense counsel engaged in the colloquy on his decision not to testify. Counsel elicited that Irving was thirty years old and had completed tenth grade.[3] When asked about "his ability to think or comprehend," Irving discussed his difficulty in thinking and remembering:

> I have disability problem of remembering—memory problems ever since 2002. And I've been on disability since around that time—2005, 2004, since I was a child. So I have loss of memory. And I do not do legal stuff and report stuff in and stuff because I have disability problems. So that's the reason why I feel I'm being taking advantage of.

His attorney tried to clarify, "You don't have any defects in your ability to think; correct?" But Irving answered: "Sometimes." The attorney asked Irving if he had understood their conversations about his case. Irving responded: "Kind of. To a certain point." Irving also agreed that when it was appropriate, he would ask questions of his counsel. Irving also agreed that he gave his counsel information relevant to his defense. Finally, Irving confirmed that he understood both his right to testify and his right against self-incrimination. Irving told the court he did not want to testify because he had "loss of memory."

Beyond that exchange, Irving points to his jury waiver for the enhancement phase of the trial. Irving asserts he was confused and the court had to reword its questions. He insists his confusion provided more information that the court should

---

[3] Irving told the presentence report investigator that he obtained his GED while in federal prison. But the investigator could not verify that information.

have recognized as a competency problem. And in the alternative, Irving claims the court should have ordered a post-trial, pre-sentencing competency hearing. For that alternative claim, he cites the presentence investigation (PSI) report and his "incomprehensible" pro se letter to the court.[4] The PSI report confirmed that Irving received social security disability benefits because of his "learning difficulties and ADHD." The report expressed that Irving "believed himself to be anxious and depressed with his current circumstances." But the report noted that Irving had "never been treated for mental health."

After our de novo review of the record, we do not find that a reasonable person would have doubted Irving's competence. Indeed, Irving's own attorney did not question his competence. *See Einfeldt*, 914 N.W.2d at 780 (quoting Richard J. Bonnie, *The Competence of Criminal Defendants: Beyond* Dusky *and* Drope, 47 U. Miami L. Rev. 539, 563 (1993) ("[T]he attorney is best situated to know whether the defendant's impairments compromise the defense of the case." (alteration in original))). True, Irving had mental limitations. But he identifies no irrational behavior or unsuitable demeanor at trial to suggest incompetency. His cognitive disability—alone—is not enough to trigger a competency hearing. *State v. Morrison*, No. 21-1647, 2022 WL 5067124, at *2 (Iowa Ct. App. Oct. 5, 2022) (citing *Einfeldt*, 914 N.W.2d at 782 n.3.).

His invocation of "memory problems" when confirming his decision not to testify did not signal an inability to appreciate the charges, understand the

---

[4] Irving's letter sought the withdrawal of his trial counsel and cited various rules of professional conduct. While somewhat rambling, it was not atypical of attempts by self-represented litigants to formulate a legal argument.

proceedings, or effectively assist in the defense. It just explained why he did not want to take the stand, subject to cross-examination. Further, neither Irving's request for clarification when waiving his right to a jury for the enhancement stage nor his pro se request to remove his counsel after the guilty verdicts raised sufficient misgivings about his mental capacity that the court needed to schedule a competency hearing.

"Without any request for a competency evaluation or apparent indicia of incompetency to prompt a court to investigate further on its own, we cannot say that 'a reasonable person [would] believe a substantial question of the defendant's competency existed' under Iowa Code section 812.3." *Mann*, 512 N.W.2d at 531 (alteration in original) (citation omitted). Thus, the court did not violate Irving's due process right.

**AFFIRMED.**