STATE of Iowa, Appellee,

v.

Robert Earl EDWARDS, Appellant.

No. 92–1119.

Supreme Court of Iowa.

Oct. 20, 1993.

Linda Del Gallo, State Appellate Defender, and Ahmet S. Gonlubol, Asst. State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Thomas S. Tauber, Asst. Atty. Gen., John P. Sarcone, County Atty., and Nan Horvat, Asst. County Atty., for appellee.

Considered by HARRIS, P.J., and CARTER, LAVORATO, NEUMAN, and ANDREASEN, JJ.

LAVORATO, Justice.

After rejecting his insanity defense, a jury found the defendant, Robert Earl Edwards, guilty of kidnapping in the first degree. In his appeal from that conviction, Edwards raises three issues. He contends that (1) the district court's failure on its own motion to order a competency hearing violated his due process rights, (2) the district court abused its discretion when it failed to warn him about disrupting the trial or to employ the alternatives of Iowa Rule of Criminal Procedure 25 to prevent such disruption, and (3) he was denied effective assistance of counsel because of his lawyers' failure to ask the district court to employ one of the alternatives of Rule 25. We affirm.

In the late afternoon of June 22, 1991, Edwards held a 45-year-old woman captive in her apartment. Earlier, he had subdued the woman in the yard of her apartment building and had carried her into her apartment. Over the next twenty hours, Edwards repeatedly sexually assaulted the woman, subjected her to unspeakable indignities, terrorized her with threats of death, and physically abused her.

The victim escaped when Edwards fell asleep. Two days later the police arrested Edwards for indecent exposure in a local park. It was during the investigation of this incident that the police focused their attention on Edwards as the perpetrator of the acts on June 22.

The State charged Edwards in a two count trial information with kidnapping in the first degree and indecent exposure. *See* Iowa Code §§ 710.1, 710.2, 709.9 (1991). Before trial, the indecent exposure count was severed. That count is therefore not involved in this appeal.

During trial Edwards was obstreperous. He attempted to assault the State's first witness, talked incessantly during the testimony of the State's witnesses, used profanity, and was generally disrespectful to the trial judge, court reporter, the prosecutor, and his own attorneys. The judge concluded the trial without taking any punitive action against the defendant for his disruptive conduct.

We recite further facts relevant to the issues to be discussed.

## I. *Competency.*

■ Constitutionally, defendants may not be tried or convicted while they are incompetent to stand trial or to assist in their defense. To deprive defendants of this right is to deprive them of due process and a fair trial. *Drope v. Missouri,* 420 U.S. 162, 172, 95 S.Ct. 896, 904, 43 L.Ed.2d 103, 113 (1975); *Pate v. Robinson,* 383 U.S. 375, 385, 86 S.Ct. 836, 842, 15 L.Ed.2d 815, 822 (1966); *State v. Lyon,* 293 N.W.2d 8, 12 (Iowa 1980).

■ Iowa Code section 812.3 provides the procedure a trial court must follow when a defendant's competency comes into question:

> If at any stage of a criminal proceeding it reasonably appears that the defendant is suffering from a mental disorder which prevents the defendant from appreciating the charge, understanding the proceedings, or assisting effectively in the defense, further proceedings must be suspended and a hearing had upon that question.

Iowa Code § 812.3. This procedure, we think, satisfies the constitutional hearing requirement set out in *Pate.* The hearing requirement of section 812.3 is triggered if the "record contains information from which a reasonable person would believe a substantial question of the defendant's competency exists." *State v. Kempf,* 282 N.W.2d 704, 706 (Iowa 1979). Whether a reasonable person would believe a substantial question of a defendant's competency exists is a legal question. The trial court's discretion does not play a role in this question. *Id.* at 706–07.

■ Because Edwards raises a constitutional question, our review as to the facts bearing on his competency is de novo. *Id.* at 707. Whether an inquiry is required on a defendant's competency depends on several factors. These include (1) the defendant's irrational behavior, (2) any demeanor at the trial that suggests a competency problem, and (3) any prior medical opinion on the defendant's competency to stand trial. *Drope,* 420 U.S. at 180, 95 S.Ct. at 908, 43 L.Ed.2d at 118; *Jones v. State,* 479 N.W.2d 265, 270 (Iowa 1991). A history of mental illness standing alone, however, does not mean the defendant is incompetent. *Jones,*

479 N.W.2d at 270. Of course in applying these factors, the critical question facing the trial judge is whether the defendant has a present ability to (1) appreciate the charge, (2) understand the proceedings, and (3) assist effectively in the defense. *See* Iowa Code § 812.3.

With these principles in mind, we turn to the question of whether during trial the impact of the information that came to the trial judge's attention created a substantial question of the defendant's competency.

■ A. *Behavior during trial.* Edwards relies heavily on his disruptive conduct during trial to generate a substantial question of his competence. This conduct, Edwards says, amply demonstrates that he neither appreciated the gravity of the charges against him nor that he was able to assist effectively in his own defense.

Following the first day of trial testimony, the following record was made out of the presence of the jury:

> PROSECUTOR: Your honor, could I request that the court admonish the defendant to behave while he is in the courtroom. Yesterday after the first witness testified, the defendant got out of his chair and in a threatening manner approached that witness.
>
> While the victim was on the stand, the defendant repeatedly throughout the testimony of the victim talked out loud and actually asked questions of the victim. The defendant threw his attorneys' copies of his pictures across the floor.
>
> This morning the defendant was given a trash can—evidently he needs to spit or something—and he threw it toward the court reporter.
>
> It's very important that the defendant is here, but it's also very important that he is respectful of the procedure that we're going through. And it's the State's position that he's doing this in court in order to prejudice the jury toward what may be his possible defense of insanity, and it would be very important for him to be here so that the jury can see him but that if he can't act properly in court that he should be removed, and we'll make arrangements

for him to watch the rest of the proceedings by way of television.

THE COURT: Well, sadly enough, my indicating to anyone that they ought to be nice to somebody else is like blowing in the wind, I'm sorry to say. Mr. Edwards knows how to behave, and hopefully we all do, and hopefully we all will. If things get out of hand, I'm sure that counsel has advised Mr. Edwards that there are other provisions for his attendance at trial other than his personal appearance in the courtroom. I hope it doesn't come to that. I don't want to have to do that.

THE DEFENDANT: The only point is, you know, this is a trial, you know. *I got one time, you know, one time to go for this case. I'm not going to sit back and let it go.* I'm not going for that [expletive], period. She can shut the [expletive] up. I'm not going to be quiet when we're talking in that [expletive] way. I'm not going to work that [expletive] way.

THE COURT: I want to let you have as much ability to involve yourself in the trial as possible, but try not to be disruptive.

The other matters that you mentioned, Miss Horvat, are argumentative, and, of course, you can advise the jury of those types of things. And counsels' opinions in regard to a lot of things are generally argumentative, but to some degree you can indicate what they view and how you think of it, and the Wrights have the equal opportunity to suggest the opposite to the jury. I think things are going relatively smoothly.

Mr. Edwards wants some involvement, and to the degree that you can be involved so that we can understand your position, that's fine. Your attorneys here are doing the best job they can possibly do, but a lot of times your ideas and positions are a little bit different than theirs.

THE DEFENDANT: Seems like to me like my attorney—I never seen my attorney yell or scream at the victims. Always talk to them nice. You know what I mean. *When I see a lawyer, I expect them to yell, scream. You got to push them to the jury.* You know what I mean, things like that.

THE COURT: That's what you call trial tactics, and juries sometimes don't like lawyers yelling at people.

THE DEFENDANT: I don't want him kissing their [expletive] [expletive]. I don't like that tactic one [expletive] bit.

THE COURT: In the Court's opinion, they're doing the best job they can possibly do, and they don't want to make the jury mad at you by their actions against witnesses, so they're—

THE DEFENDANT: Like I said, the way I could see the court—The way I could see the court—The way I could see, *lawyers should be yelling and screaming at people,* stuff like that.

THE COURT: · They're on delicate ground. They're doing the best job they can.

THE DEFENDANT: *I'm facing life in jail, things like that. I got one chance. That's it. When this is over, this is goodby.* You know what I mean. That's the way I feel about it.

From this excerpt of the record, especially the language we have emphasized, it is plain to us that Edwards appreciated the seriousness of the charge and understood the proceedings. He left no doubt that he was going to take an active role in his defense and in no uncertain terms explained why.

During trial, Edwards did exactly what he said he was going to do; he took an active role in his defense. We agree with the State that Edwards' behavior—though seemingly bizarre—was rationally motivated, purposeful, and in keeping with his expressed intention. For example, during damaging testimony of important State witnesses, Edwards was disruptive, frequently interrupting their testimony and attacking their credibility. In contrast, during the testimony of important defense witnesses, Edwards behaved. At the end of the testimony from his most important witness—the medical expert on the insanity defense—Edwards quipped, "appreciate it, man."

When Edwards interrupted testimony, he did so to (1) correct or expand on testimony he thought was incorrect or incomplete, (2) discredit unfavorable testimony, or (3) sug-

gest questions he thought his lawyers should ask. Such behavior suggests that Edwards was alert and in touch with reality. This behavior is in stark contrast to that of two defendants who successfully convinced this court that a reasonable question existed as to their competency. *See State v. Pedersen,* 309 N.W.2d 490, 501 (Iowa 1981); *Kempf,* 282 N.W.2d at 710.

In *Pedersen,* the defendant thought—incorrectly—that he was entitled to be released because he had not been tried in thirty days. He refused assistance of counsel. Nevertheless, the district court did appoint standby counsel. During the trial, the defendant made no attempt at any defense. He never questioned witnesses, never objected, never offered any evidence, never requested any jury instructions, and never argued to the jury. Some of his statements during trial were nonsensical and suggested he was out of touch with reality. After the jury had found him guilty of first-degree murder of a male victim, the defendant said he could not be sentenced for murder because "[m]urder is killing a girl." In addition, standby counsel moved for a mistrial, contending that the defendant was incompetent to assist in his defense, a motion the defendant resisted.

In *Kempf,* the defendant was a sixteen-year-old male of borderline intelligence with emotional development lower than his age. He had limited experience with the legal system, had difficulty remembering basic events in his life, and had a limited grasp of reality. He was allowed to plead guilty against advice of counsel who questioned his competency. In addition the district court permitted his plea to stand even though a presentence investigation and psychiatric report lent additional support as to a reasonable question of competency.

B. *Prior medical opinion on competency to stand trial.* Edwards points to information the trial judge had that Edwards' competency to stand trial had been questioned in 1989 in Kansas. This information together with the disruptive behavior, Edwards says, added up to a substantial question of his competence.

In October 1989 Edwards was admitted under court order to Larned State Hospital in Larned, Kansas, for an evaluation to determine whether he was competent to stand trial on pending criminal charges. The Kansas medical records are in evidence. We set out the significant portions of those records:

*Legal Situation.* Mr. Edwards seems to be charged in at least three separate court cases.... He did stress that all his charges are misdemeanors and that he did not consider any of them too important....

*Relevant Background Information.* Mr. Edwards relates that he has a ninth grade special education, and cannot explain which specific type of special education he was in. He admits to substance abuse since the age of eleven, as well as legal difficulties from that age. His preferred substances include alcohol, angel dust, cocaine (including crack), and marijuana.... He is very specific in telling that he has a schizophrenic diagnosis and he has apparently been receiving Supplemental Security Income (SSI) since 1984.... Mr. Edwards has never apparently worked, and seems somewhat incensed that somebody would think that he ought to work for a living....

*Current Adjustment/Mental Status....* It is noted that while interviewing Mr. Edwards that he goes off the track of the questions, but this seems to be quite purposeful as a way of avoiding answering or, in some cases as a way of trying to antagonize the interviewer. He was cooperative with testing only once he understood that it was going to have to be finished before he could be returned to the court. Mr. Edwards is anxious to return to court because he does not believe that he will get much of a sentence for his charges, and is afraid he might wind up spending more time here at State Security Hospital than what he could be sentenced for. He also has some concern about his disability payments being taken by the hospital if he stays here too long.

Mr. Edwards was well oriented in three spheres with this interviewer and showed no evidence of impaired memory, in spite of his claims of having a bad memory. His attention span, immediate recall, and con-

centration were consistent with low average intellectual functioning.... He did have a tendency to give rather tangential answers to questions, although they seemed to be purposeful instead of a symptom of mental illness. When he was convinced that it was to his benefit to answer straight, he showed no evidence of disorganized thinking or any tendency to be tangential or circumstantial....

*Assessment.* Mr. Edwards scored a verbal I.Q. score of 73, a performance I.Q. score of 68, and a full scale I.Q. score of 69; thus, technically placing himself in the range of mild mental retardation. However, his functioning level is in the borderline range and it is felt that in this case borderline intellectual functioning is the more appropriate diagnosis. [Any neuropsychological dysfunction that may be present is probably] related to his chronic substance abuse.

Mr. Edwards is well aware of legal procedures in a concrete manner. He tends to overly emotionalize his responses, but he is aware of the need to control his outbursts in court and of how to cooperate with an attorney. However, at the same time Mr. Edwards openly admits that he doesn't intend to tell his attorney the truth, because he does not think he should tell anybody the whole truth. This appears to be related to personality, more than to any type of delusion.

... He has a pattern of heavy drug usage and many of the psychiatric problems he has exhibited appear to have developed after, and as a result of, his drug usage....

In addition, Mr. Edwards displays a personality disorder which is marked by manipulation, poor judgment, limited frustration tolerance, and a tendency to overreact to any type of stress. There are many indications that Mr. Edwards does have a tendency to exaggerate psychiatric problems, particularly depression, anxiety and possibly bizarre thoughts, because he has an investment (secondary agenda) in being found mentally ill. By being mentally ill over the years, Mr. Edwards has found a way of supporting himself without working, and has avoided numerous legal/social difficulties....

*Prognosis.* Prognosis is considered poor for numerous factors.... [Mr. Edwards] appears to have an investment in being mentally ill which effectively prevents him from developing any motivation to deal with either his substance abuse or psychiatric problems.

*Diagnosis.* Organic Mental Disorder; Psychoactive Substance Abuse; H/O Psychotic Disorder (probably related to substance abuse)....

....

*Competency Opinion.* Mr. Edwards is aware of legal procedures and of his current charges and the ramifications. He is capable of cooperating with an attorney in forming a defense, but he may choose not to be totally truthful. This choice appears to be a result of his personality disorder, not due to either organic dysfunction or psychosis, therefore is not considered to effect his actual competency to stand trial. In summary, Mr. Edwards is considered competent to stand trial.

What emerges from these medical records is a picture of Edwards' personality. Edwards certainly has a mental impairment; however, the impairment is aggravated by his prolonged substance abuse. Although his intellectual functioning is low, he is street smart. He knows he has a mental impairment and uses it to avoid working and to extricate himself from legal difficulties. He is no stranger to the criminal justice system, and he knows how to manipulate it to his advantage. No doubt the trial judge and defense attorneys in this case viewed Edwards the same way. That perhaps is why neither the judge nor the defense attorneys insisted on a competency hearing, a significant factor that is relevant on the issue. *See State v. Stoddard,* 180 N.W.2d 448, 451 (Iowa 1970).

In sum, our de novo review convinces us that no reasonable person would believe that a substantial question of Edwards' competency existed during trial. Rather, the record affirmatively shows that Edwards had a present ability to appreciate the charge, to understand the proceedings, and to assist

effectively in his defense. In short, he was competent to stand trial. The district court committed no legal error in not holding a competency hearing pursuant to section 812.3.

## II. *Failure to Warn Against Disrupting Trial and/or Employ Alternatives of Iowa Rule of Criminal Procedure 25.*

In posttrial motions, Edwards alleged that he should receive a new trial "because his disruptive behavior at trial prevented him from receiving a fair trial." Before this, Edwards had not raised the issue with the district court.

On appeal Edwards expands this ground. He now contends the district court abused its discretion for not warning him against disrupting the trial and/or not employing the alternatives of Iowa Rule of Criminal Procedure 25. These alternatives include (1) citing the defendant for contempt, (2) removing the defendant from the courtroom until the defendant promises to behave, and (3) binding and gagging the defendant in the courtroom.

For obvious reasons, we find completely without merit Edwards' posttrial motion claim that he should receive a new trial because his own conduct prevented him from receiving a fair one. Apparently realizing how meritless this claim is, Edwards now contends the district court had an independent duty to exercise its discretion and warn him against disrupting the trial and/or employ the alternatives of Rule 25. We likewise find this contention without merit.

■ In the first place, the district court did warn Edwards against disrupting the trial. The court also indicated that continuation of such conduct could result in Edwards' removal from the courtroom.

In the second place, imposing such an independent duty on the district court would turn Rule 25 on its head. The alternatives of Rule 25 are based on suggestions outlined in *Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). *See State v. Moore,* 276 N.W.2d 437, 440 (Iowa 1979). The United States Supreme Court suggested these alternatives, after appropriate warning, as "constitutionally permissible ways for a trial

judge to handle an obstreperous defendant." *Allen,* 397 U.S. at 343–44, 90 S.Ct. at 1061, 25 L.Ed.2d at 359. *See also Moore,* 276 N.W.2d at 440 (citing *Allen*).

■ The Sixth Amendment to the federal Constitution gives a defendant the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. One of the most basic rights guaranteed by the Confrontation Clause is the defendant's right to be present in the courtroom at every stage of the trial. *Allen,* 397 U.S. at 338, 90 S.Ct. at 1058, 25 L.Ed.2d at 356. An obstreperous defendant creates a tension between this basic right and the need to complete the trial in a dignified, orderly, and safe way.

*Allen* suggested the alternatives—contempt, removal, or gagging—as a way to protect a defendant's constitutional right of confrontation while at the same time permitting a dignified, orderly, and safe completion of the trial. *Id.* at 343–44, 90 S.Ct. at 1061, 25 L.Ed.2d at 358–59. *Allen* makes clear that

> trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case. No one formula for maintaining the appropriate courtroom atmosphere will be best in all situations.

*Id.* at 343, 90 S.Ct. at 1061, 25 L.Ed.2d at 359. In short, whether to employ any of the alternatives is a judgment call depending upon the circumstances of each case. In conformity with this approach, Rule 25 clearly gives trial courts discretion on whether and to what extent to use any of the alternatives in the Rule. Iowa R.Crim.P. 25; *Moore,* 276 N.W.2d at 440.

Rule 25 does not—by its terms—burden district courts with an independent duty to warn defendants against disruptive conduct or to employ any of the alternatives of the Rule. A warning is constitutionally required by *Allen* only if the district court intends to employ any of those alternatives in case of continuing disruptive behavior. And, whether to employ any of the alternatives is discretionary under both *Allen* and Rule 25. *Allen,* 397 U.S. at 343, 90 S.Ct. at 1060, 25

L.Ed.2d at 359; *Moore,* 276 N.W.2d at 440. Obviously, such a warning is necessary because of the importance of the defendant's presence in the courtroom for confrontational purposes. If a trial court thinks it can complete the trial without the drastic alternatives of removal or gagging, we fail to see why a warning is necessary.

Moreover, we know of no case authority that has interpreted *Allen* to impose the kind of a duty Edwards seeks to have us impose. The reason seems obvious to us: imposing an independent duty to warn or to employ the contempt, removal, or gagging alternatives would allow a defendant bent on delaying or frustrating completion of trial to profit by such conduct.

Here the trial judge thought he could complete the trial without taking any punitive measures against Edwards. This judgment call protected Edwards' right of confrontation while at the same time permitting the trial to be completed. Under this record, we can scarcely say that the trial judge abused his discretion in making that call.

### III. *Ineffective Assistance of Counsel.*

Edwards claims that his lawyers should have requested the trial judge to use one of the alternatives of Rule 25 to curb his behavior. Failure to do so, Edwards says, amounted to ineffective assistance of counsel.

We find the record inadequate to address Edwards' claim, and for that reason, we preserve it for postconviction determination. This will enable Edwards' trial counsel to respond in a full evidentiary hearing. *See State v. Fox,* 491 N.W.2d 527, 535 (Iowa 1992).

### IV. *Disposition.*

In sum, the district court did not err in failing to order a competency hearing. Nor did the court err in failing to (1) warn Edwards about his disruptive behavior and/or (2) employ the alternatives of Iowa Rule of Criminal Procedure 25. In short, our laws guarantee a criminal defendant a fair trial— not a perfect one. Because of Edwards' behavior, the trial was not as orderly and dignified as it could have been. Neverthe-

less, we think Edwards received a fair trial. Finally, we preserve Edwards' claim of ineffective assistance of counsel for postconviction determination.

**AFFIRMED.**