# IN THE COURT OF APPEALS OF IOWA

No. 19-1335
Filed September 23, 2020

**BOBBY EUGENE McGEE,**
     Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
     Respondent-Appellee.
_____

Appeal from the Iowa District Court for Decatur County, Gregory A. Hulse,

Judge.

Bobby McGee appeals the denial of his application for postconviction relief.

**AFFIRMED.**

Gary Dickey of Dickey, Campbell, & Sahag Law Firm, PLC, Des Moines, for

appellant.

Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney

General, for appellee State.

Considered by Tabor, P.J., and May and Greer, JJ.

**MAY, Judge.**

Bobby McGee appeals the denial of his application for postconviction relief (PCR). On appeal, he argues his trial counsel was ineffective for failing to investigate his mental-health history and challenge his competency. We affirm.

## I. Background

In August 2012, McGee was charged with (1) first-degree robbery;[1] (2) first-degree burglary;[2] and (3) four counts of false imprisonment.[3] McGee entered a plea agreement with the State. Consistent with the agreement, McGee pled guilty to first-degree robbery. In exchange, the remaining charges against McGee were dismissed. On November 2, McGee was sentenced to an indeterminate term of incarceration not to exceed twenty-five years, subject to the seventy percent mandatory minimum. He took no direct appeal.[4]

Over two years later, on February 23, 2015, McGee filed this PCR action. Following an evidentiary hearing, the district court denied McGee's application in its entirety. McGee appeals.

## II. Standard of Review

Postconviction proceedings are normally reviewed for errors at law. *Castro v. State*, 795 N.W.2d 789, 792 (Iowa 2011). However, when the claim is ineffective-assistance-of-counsel, our review is de novo. *Id.* Even so, "we give

---

[1] Iowa Code §§ 711.1, 711.2 (2012).
[2] Iowa Code §§ 713.1, 713.3.
[3] Iowa Code § 710.7.
[4] Pursuant to the parties' agreement, the remaining counts were dismissed upon expiration of the time for appeal.

weight to the lower court's findings concerning witness credibility." *King v. State*, 797 N.W.2d 565, 571 (Iowa 2011) (citation omitted).

## III. Analysis

To prevail on his ineffective-assistance-of-counsel claim, McGee "must demonstrate '(1) his trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice.'" *Lado v. State*, 804 N.W.2d 248, 251 (Iowa 2011) (quoting *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006)). He "must prove both elements by a preponderance of the evidence." *Id.* We address each element separately.

### A. Duty element

McGee's claims focus on counsel's investigation of his mental-health issues.[5] McGee points to various personal circumstances, including (1) his mental conditions (anxiety and depression) and related medications; (2) his physical condition (liver cancer) and related medications; (3) physical consequences of his conditions and medications (pain, loss of motor function, torpor, and hospitalization); and (4) other miscellaneous circumstances, namely his unemployment, mood swings, reported suicidality,[6] cruelty toward a dog, and

---

[5] McGee had two attorneys acting as his defense counsel. One attorney was court appointed. The other was an associate attorney in the same law firm, who was brought in to assist during scheduling conflicts. McGee's ineffective-assistance-of-counsel claim is directed at both attorneys. We refer to them collectively as "counsel."

[6] Some of McGee's assertions are questionable. In his PCR application, McGee alleges that he was hospitalized a few weeks prior to the robbery for a suicide attempt. Yet, at the PCR hearing, he testified that he was never admitted to the hospital. And his daughters, who took him to the hospital after a bout of anger, did not know about his suicide attempt until the filing of this PCR application. During the plea hearing—approximately three months after his alleged hospitalization—

criminal behavior surrounding the robbery to which he pled guilty—particularly his "plan to kill . . . three people." McGee claims counsel was ineffective for failing to act on these "warning signs" by further investigating his mental health and, ultimately, seeking "a competency hearing pursuant to Iowa Code section 812.3."

In considering McGee's claims, "we measure counsel's performance against the standard of a reasonably competent practitioner." *Dempsey v. State*, 860 N.W.2d 860, 868 (Iowa 2015) (citation omitted). "It is presumed the attorney performed [their] duties competently, and a claimant must successfully rebut this presumption by establishing by a preponderance of the evidence counsel failed to perform an essential duty." *Id.* And like most professional duties, the duty to

---

McGee told the court he had not been hospitalized for any physical or mental condition in the last six months.

At the PCR hearing, McGee presented his testimony, as well as the testimony of two family members, concerning his mental health before and after the robbery. McGee's evidence emphasized a suicide attempt shortly before the robbery and also McGee's plan to commit suicide after carrying it out. But McGee's counsel testified that there were "a variety of versions of what was supposed to happen" the night of the offense. And none of the versions McGee told counsel included McGee taking his own life. McGee, himself, responded "no" when questioned, "Did you ever tell either one of your attorneys [] that you had been suicidal or had been thinking about harming yourself?" Later, McGee added this testimony:

> Q. Did you ever tell [your counsel] that you had attempted or thought about suicide? A.: No.
> Q. Did your children ever tell either one of them? A. My children never talked to any of them.

McGee's niece testified that she also never reached out to McGee's counsel. Further, there was extensive testimony from McGee's family members that they did not know the extent of his mental condition until the filing of this PCR application.

McGee also testified that, when he entered the Decatur County Jail, he still thought about ending his life. However, in the Decatur County Jail Report of Admissions/Booking, he responded "No" to all questions asking if he had *ever* attempted suicide, been treated for a mental condition, tried to hurt himself, attempted to kill himself, or thought about hurting himself. On the same document, jail staff reported McGee showed no signs of depression, anxiety, fear, or anger.

investigate "is not unlimited." *Ledezma v. State*, 626 N.W.2d 134, 145 (Iowa 2001). "There is no need to investigate a particular matter, for example, if the defendant has given counsel a reason to believe the investigation would be fruitless or unwarranted." *Id.* "Similarly, investigation of a defense may be curtailed or eliminated if the facts are already known to counsel through another source." *Id.* "In each instance, the decision to investigate a particular matter must be judged in relationship to the particular underlying circumstances." *Id.*

Here, the important "underlying circumstances" involve McGee's mental health and, more to the point, his competency at the time of the guilty plea.[7] Our law presumes McGee was competent. *See State v. Johnson*, 784 N.W.2d 192, 194–95 (Iowa 2010). Mental illness alone will not overcome the presumption. *Id.* (finding the defendant failed to prove he was not competent to stand trial, even though a psychologist testified the defendant suffered from borderline personality disorder which manifested as "emotional variability and paranoia," including "distrust of his lawyers" and belief that his lawyers were "conspiring against him"); *see also State v. Edwards*, 507 N.W.2d 393, 395 (Iowa 1993) ("A history of mental illness standing alone, however, does not mean the defendant is incompetent."); *State v. Walker*, No. 18-0039, 2018 WL 6123022, at *5 (Iowa Ct. App. Nov. 21, 2018) ("[A]n inquiry into the defendant's mental health is not required during the

---

[7] In his brief, McGee frames the issue as "competency to stand trial." Given the procedural posture of this case—it was resolved through a guilty plea, well before any jury trial—we assume this is a claim regarding his competency at the time of his guilty plea. *See State v. Kempf*, 282 N.W.2d 704, 707 (Iowa 1979) ("A guilty plea proceeding is a 'stage of a criminal proceeding' for purposes of section 812.3."). In this, we follow the lead of the PCR court, whose ruling focused on whether "McGee was competent to plead guilty."

plea proceeding unless the question of the defendant's competency is apparent from the record or the defendant has directly raised it."). "Whether an inquiry is required on a defendant's competency depends on several factors," including "(1) the defendant's irrational behavior," (2) "any demeanor" during the proceeding "that suggests a competency problem, and (3) any prior medical opinion on the defendant's competency to stand trial." *Edwards*, 507 N.W.2d at 395. Ultimately, though, the "critical question" is "whether the defendant has a present ability to (1) appreciate the charge, (2) understand the proceedings, and (3) assist effectively in the defense." *Id.*; *accord Jasper v. State*, No. 16-2039, 2017 WL 6513603, at *2 (Iowa Ct. App. Dec. 20, 2017) ("A defendant may not be subjected to a criminal trial if his 'mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense.'" (citation omitted)).

The PCR court found "[n]othing in the record" to suggest that counsel was "ineffective in failing to properly investigate the significance of McGee's mental health issues." "On the contrary," the court found counsel engaged in appropriate investigation—including conversations with McGee—to determine "McGee was competent to plead guilty." All things considered, the court found counsel

> performed her essential duties as McGee's attorney as measured against the standard of a reasonably competent practitioner; indeed, she had the benefit of being a medical professional, which put her in a unique position to evaluate McGee's mental health deficiencies at a level greater than that of a "reasonably competent practitioner."

So the court concluded "McGee's counsel was not ineffective, and accordingly, could not have prejudiced McGee during his pre-trial proceedings."

We agree. McGee's attorneys—one of whom had twenty-years of experience as a registered nurse—not only reviewed over 200 pages of McGee's medical records but also talked with McGee about his medical condition and reached out to McGee's medical providers to request information about his treatment. During interactions with McGee, counsel found him to be "very clear, very cognizant," "always clear of mind," and "never" afflicted with "confusion." Counsel never had any concerns about his mental status, his ability to comprehend the charges against him, or his ability to assist in his own defense.

Nor do we believe counsel should have been alarmed by McGee's statements or behavior at the plea hearing. Here is what McGee told the plea court about his health:

> THE COURT: How old are you?
> A. 59.
> THE COURT: And what's the extent of your education?
> A. I've got three years of college.
> THE COURT: Do you have any trouble reading, writing, or understanding the English language?
> A. No, I don't, sir.
> THE COURT: Are you presently under the care of a physician, psychiatrist or psychologist?
> A. Yes, I am.
> THE COURT: Tell me about that.
> A. I am under medical treatments for my liver transplant.
> THE COURT: All right. So you are taking medications at this time because of a transplant?
> A. Yes.
> THE COURT: And have you been taking your medications regularly?
> A. Yes, I have.
> THE COURT: And do they, when you take your medications does it cloud your judgment or interfere with you understanding what we're doing here today?
> A. No, they don't.
> THE COURT: So it doesn't affect your ability to think or reason; is that right?
> A. I live with them every day. It's my every-day occurrence.

THE COURT: Okay. Are you at this time under the influence of any alcoholic beverages or illegal drugs?

A. No.

THE COURT: Just the medications that are prescribed for you?

A. Yes.

THE COURT: Have you in the last six months been hospitalized for the treatment of any physical or mental condition?

A. No.

Nor does McGee point to evidence of irrational behavior or troubling demeanor at the plea hearing. Likewise, we have not found any "warning signs" in the plea transcript. Instead, it appears McGee intelligently considered the court's questions and provided rational answers. For example, here is what McGee told the plea court about the robbery:

THE COURT: According to the trial information you were in Decatur County, Iowa on August 10, 2012; is that correct?

A. Yes.

THE COURT: And on that date you entered a private residence []; is that correct?

A. Yes.

THE COURT: And that was an occupied structure; it was a home, was it not?

A. Yes.

THE COURT: And there was a family living in the home when you went in?

A. Yes.

THE COURT: And did you break in to the home?

A. Just opened the door and walked in.

THE COURT: All right. The door was closed, though?

A. Yes.

THE COURT: And it wasn't open to the public, and you weren't invited in, and you had no right, license, or privilege to be in there; is that correct?

A. No.

THE COURT: And were you or your codefendants armed with any dangerous weapons?

A. Yes.

THE COURT: Were you armed?

A. Yes.

THE COURT: What did you have as a weapon?

A. 12-gauge shotgun.

THE COURT: And did you have that shotgun for the purpose of intimidating and putting fear in the occupants of the home?

A. Yes.

THE COURT: And you understand that by doing that, even though you may disagree, that falls into the rubric of an assault. Do you understand that?

A. Yes.

THE COURT: Is there any doubt in your mind that the occupants were intimidated, were put in fear with you and your cohorts being armed?

A. No, there is no doubt they were.

THE COURT: And did you commit any other crimes while you were in there? Did you steal anything?

A. No.

THE COURT: Did you intend to steal anything when you went in?

A. Drugs.

THE COURT: All right. Apparently you didn't find any?

A. No.

From our de novo review, we agree with the district court that counsel had no reason to question McGee's competency to plead guilty. We also conclude counsel breached no duty by failing to further investigate mental health issues or seek a competency hearing. Counsel was not ineffective.

**B. Prejudice element**

When reviewing an ineffective-assistance claim, courts "may consider either the prejudice prong or breach of duty first, and failure to find either one will preclude relief." *State v. McNeal*, 897 N.W.2d 697, 703 (Iowa 2017) (quoting *State v. Lopez*, 872 N.W.2d 159, 169 (Iowa 2015)). So, because we agree with the district court that counsel breached no essential duty, we need not reach the prejudice element.

It bears mentioning, however, that the prejudice requirement provides an additional ground to affirm. In his appellant brief, McGee does not claim he has proven prejudice. Instead, he argues prejudice should be presumed.

We disagree for two reasons. First, as the State points out, McGee did not raise a presumed-prejudice argument before the district court.[8] So error is not preserved. *See State v. Rutledge*, 600 N.W.2d 324, 325 (Iowa 1999) ("Nothing is more basic in the law of appeal and error than the axiom that a party cannot sing a song to us that was not first sung in trial court.").

Moreover, even if error were preserved, we could not adopt McGee's presumed-prejudice argument. Under Iowa law, the general rule is that PCR applicants "must show" prejudice. *State v. Harrison*, 914 N.W.2d 178, 206 (Iowa 2018) ("To prove ineffective assistance of counsel, the defendant *must show* 'by a preponderance of the evidence both that counsel failed an essential duty *and that the failure resulted in prejudice.*'" (emphasis added) (citation omitted)). We cannot create new exceptions to this rule.[9] Any new exceptions should be recognized first by the supreme court, not this intermediate court. *See Beloved v. State*, No. 17-1908, 2019 WL 1300224, at *1 (Iowa Ct. App. Mar. 20, 2019) (declining to adopt a "less deferential" prejudice standard for ineffective-assistance claims and concluding any changes in the prejudice standard should come from the supreme court).

---

[8] Before the district court, McGee noted: "With respect to the second element the applicant must prove that but for the counsel's breach of an essential duty, he would have insisted on going to trial."

[9] No new exception was created in *State v. Einfeldt*, 914 N.W.2d 773 (Iowa 2018). *Einfeldt* was a direct appeal in which the district court had denied defense counsel's request for a competency evaluation. 914 N.W.2d at 777. *Einfeldt* focuses on the district judge's duty when faced with a Chapter 812 motion. *Id.* at 779–83. It did not address the prejudice element for an ineffective-assistance-of-counsel claim.

In his reply brief, though, McGee raises actual prejudice arguments. We reject these arguments for two reasons. First, we generally decline to address arguments raised for the first time in a reply brief. *See Villa Magana v. State*, 908 N.W.2d 255, 260 (Iowa 2018). And McGee has identified no relevant exception. *See id.* ("Yet we have noted exceptions.").

Moreover, based on our de novo review, McGee has not demonstrated prejudice. To establish prejudice, McGee must prove "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Dempsey*, 860 N.W.2d at 868 (quoting *Bowman v. State*, 710 N.W.2d 200, 203 (Iowa 2006)). "Within the context of a claim that counsel failed to request a competency hearing, prejudice can be established by proving a reasonabl[e] probability the defendant would have been found unfit had a competency hearing been held." *State v. Harris*, No. 12-2139, 2014 WL 2432588, at *7 (Iowa Ct. App. May 29, 2014) (McDonald, J., concurring specially); *see, e.g.*, *Kendall v. State*, No. 07-1493, 2008 WL 4877457, at *4 (Iowa Ct. App. Nov. 13, 2008) ("The evidence does not show [defendant] would have been declared incompetent under section 812.3 if trial counsel had requested a competency hearing. We therefore conclude [defendant] has failed to show he was prejudiced by trial counsel's failure to request a competency hearing."); *State v. Hutchins*, No. 99-1959, 2001 WL 804365, at *5 (Iowa Ct. App. July 18, 2001) ("Even if we were to assume trial counsel failed in an essential duty to conduct an inquiry into [defendant's] competency, [defendant] has not shown a reasonable probability that he would have been deemed incompetent if such an inquiry had been made.

Without proof of prejudice, he cannot demonstrate ineffective assistance of his trial counsel.").

From the record before us, we cannot conclude that—if counsel had raised the issue—there is a reasonable probability McGee would have established he was not competent. *See State v. Pedersen*, 309 N.W.2d 490, 496 (Iowa 1981) ("A defendant is initially presumed to be competent, and the burden to establish the contrary should be on him; if the evidence is in equipose [sic] the presumption should prevail."). In fact, the plea record suggests McGee was actually competent at that stage in the criminal proceeding. *See Kempf*, 282 N.W.2d at 707 ("A guilty plea proceeding is a 'stage of a criminal proceeding' for purposes of section 812.3.").

The district court was right to deny McGee's PCR application.

**AFFIRMED.**