# IN THE COURT OF APPEALS OF IOWA

No. 19-0856
Filed November 30, 2020

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**SCOTT DWAYNE CHATMAN,**
      Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Robert B. Hanson (competency), William P. Kelly (competency), and Jeffrey D. Farrell (trial/sentencing), Judges.

A defendant appeals his convictions for first-degree robbery, first-degree burglary, and assault causing bodily injury. **CONVICTIONS AFFIRMED; SENTENCE VACATED AND REMANDED FOR RESENTENCING.**

Martha J. Lucey, State Appellate Defender, and Bradley M. Bender, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered by Vaitheswaran, P.J., and Tabor and Schumacher, JJ.

**TABOR, Judge.**

A jury convicted Scott Chatman of burglary in the first degree, robbery in the first degree, and assault causing bodily injury. He now appeals those convictions, raising four issues: (1) incompetency; (2) ineffective assistance of counsel; (3) insufficient proof that he committed the crimes; and (4) sentencing error. In a pro se brief,[1] Chatman advances three more arguments: (5) insufficient evidence that he used a dangerous weapon while committing the crimes; (6) his alleged absence during the competency hearings; and (7) admission of "grisly misleading photos of the deceased victim to inflame the passion of the jury."

On the first and sixth issues, we find no due process violation in the district court's determination that Chatman was competent to stand trial under Iowa Code chapter 812 (2018). On the second and seventh issues, we preserve his claims of ineffective assistance of counsel for possible postconviction relief proceedings. On the third and fifth issues, viewing the evidence in the light most favorable to the jury's verdicts, we affirm his convictions. And on the fourth issue, we remand for resentencing.

---

[1] Last year, the Iowa General Assembly enacted Senate File 589, an omnibus crime bill that foreclosed our ability to consider pro se filings when a defendant has an attorney. *See* 2019 Iowa Acts ch. 140 § 30 (codified at Iowa Code § 814.6A(1)). Because Chatman has appellate counsel, the State argues we cannot consider his pro se briefing. In *State v. Macke*, our supreme court determined other provisions of the same omnibus bill did not apply to appeals pending on July 1, 2019. 933 N.W.2d 226, 228 (Iowa 2019); *see also State v. Gordon*, 943 N.W.2d 1, 5 (Iowa 2020) (reiterating amendments did not apply retrospectively to appeals from judgments entered before statute's effective date). Since then, we have consistently rejected the State's argument on pro se filings. *See State v. Lindaman*, No. 19-1088, 2020 WL 5229188, at *1 n.1 (Iowa Ct. App. Sept. 2, 2020) (collecting cases). Because the district court entered judgment on May 1, 2019, we may consider Chatman's pro se supplemental briefs.

## I.     Facts and Prior Proceedings

Felix Mandujano had a good neighbor in Brian Everson.  Everson lived with his girlfriend Breanna George in the same Des Moines apartment complex as Mandujano.  After Mandujano received a cancer diagnosis in 2015, Everson and George took him to chemotherapy appointments and ran other errands for him.  Everson described the toll the disease took on his friend: "I watched him go from about 140 pounds to 106 pounds in a matter of weeks. . . . He could hardly move at all.  He shuffled his feet when he walked.  It was hard for him to stand.  He got dizzy really easy."[2]

During his friendship with Mandujano, Everson met Chatman.  In late spring 2016, Everson stopped by Mandujano's apartment when Chatman was visiting.  They interacted "long enough to have a beer."  After that first encounter, Everson noticed Chatman coming and going from Mandujano's apartment four or five other times.  On those occasions, he recalled Chatman driving a green minivan.  From conversations with Mandujano, Everson grew worried about Chatman's visits to his ailing friend's apartment.

One evening in July 2016, Everson and George were walking their basset hounds when they saw Chatman drive toward Mandujano's building in his minivan.  Expecting trouble, Everson handed the dog's leash to George and took off running.  By the time he reached the parked van, Everson saw Chatman "donkey kick" the door of Mandujano's apartment and force his way inside.

---

[2] Mandujano died in the summer of 2018.

When Everson reached the doorway, he could hear Chatman's demand: "Give me the money." Everson saw Chatman reaching out to threaten Mandujano. When he drew closer, Everson could see Chatman held a knife. Everson armed himself with a stick and crossed the threshold, only to have Chatman turn and charge at him. Everson back pedaled, falling off the stoop and into Mandujano's rose garden. Chatman commandeered the stick and started striking Everson. By this time, George, with the dogs in tow, had caught up with her boyfriend. She yelled for Chatman to stop hitting him. In reaction, Chatman stopped beating Everson and returned to the apartment—again demanding money from Mandujano. During this interlude, Everson reached through the open window of Chatman's parked van to grab the keys from the ignition. Seeing this move, Chatman rushed toward Everson with the knife. Everson ran to another neighbor's house, where he called 911. From Chatman's attack, Everson endured a broken finger, two broken toes, and gashes on his shins. Mandujano also suffered cuts to his right hand and left bicep and elbow.

The State charged Chatman with first-degree burglary, first-degree robbery, and assault causing bodily injury in a March 2018 trial information. The district court scheduled a jury trial for September. But before the parties completed jury selection, the court suspended proceedings and ordered a competency evaluation. After the evaluation, the court found Chatman incompetent to stand trial and sent him to the Iowa Medical and Classification Center (IMCC) for treatment. A few months later, the court found the IMCC had restored Chatman's competence. Chatman stood trial in March 2019. A jury convicted him as charged. He now appeals.

**II.      Scope and Standards of Review**

The issues raised on appeal require varying standards of review. We review the district court's decision on Chatman's competency de novo. *See State v. Johnson*, 784 N.W.2d 192, 194 (Iowa 2010). Likewise, we review his claims of ineffective assistance of counsel de novo. *See State v. Shorter*, 945 N.W.2d 1, 6 (Iowa 2020). But we review his challenge to the sufficiency of the evidence for the correction of legal error. *See State v. Schiebout*, 944 N.W.2d 666, 670 (Iowa 2020). Viewing the record in the light most favorable to the State, we will uphold the verdicts if substantial evidence supports them. *Id.* We also review his sentence for correction of legal error and will not reverse unless Chatman can show an abuse of discretion or defect in the sentencing procedure. *See State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002).

**III.      Analysis**

**A.      Competency to Stand Trial**

Chatman lodges three complaints about the district court's handling of the competency issue. First, he contends the court erred by concluding his time at the IMCC restored his competency to stand trial and by not monitoring the proceedings to ensure that Chatman remained competent. Second, he argues the district court missed a statutory deadline for holding a competency restoration hearing. Third, in his pro se filing, Chatman asserts he was not present at the unreported competency hearings in October 2018 and January 2019. And he claims his absence from those hearings violated due process. We will address each allegation in turn.

### 1. Restoration of Competency Standard

We start with the fundamentals. Criminal defendants cannot stand trial if they are "suffering from a mental disorder which prevents [them] from appreciating the charge, understanding the proceedings, or assisting effectively in the defense." Iowa Code § 812.3(1); *State v. Lyman*, 776 N.W.2d 865, 874 (Iowa 2010), *overruled on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 708 n.3 (Iowa 2016). Subjecting an incompetent defendant to trial violates due process. *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996). But we presume a defendant is competent to stand trial and place the burden on the defendant to prove otherwise by a preponderance of the evidence. *Lyman*, 776 N.W.2d at 874.

Chatman's counsel met that burden when the court first set the case for trial. On the second day of jury selection in September 2018, counsel told the court:

> My concern, Your Honor, in this case is that there are times when Mr. Chatman and I are able to communicate and we're able to talk about matters, but there are other times when he is completely uncooperative, to say the least, with me, not listening to anything that I say and alleging things that are simply not true.

Following its dialogue with Chatman, the court ordered a competency evaluation.

After evaluating him, psychologist Michael Huston reported Chatman received treatment for bipolar disorder, post-traumatic stress disorder (PTSD), and anxiety. Despite receiving treatment, Chatman continued to display "significant symptoms of paranoid thought and emotional reactivity," according to Dr. Huston. Dr. Huston found "mild impairment" of Chatman's ability to appreciate the charges against him and "minimal impairment" of his ability to understand the legal proceedings. But on the ability to assist effectively in his defense, Dr. Huston found

Chatman showed "substantial impairment." To illustrate that third finding, Dr. Huston reported Chatman's belief that his defense attorney was working with the prosecutor and judge without regard for justice. He recommended transferring Chatman to the IMCC for restoration of his competency to stand trial. The court accepted that recommendation and suspended proceedings. *See* Iowa Code § 812.6(2)(a).

Then, on November 30, 2018, psychiatrist Arnold Andersen notified the court that Chatman was "now competent to stand trial after completion of restoration at IMCC." Dr. Andersen believed Chatman was "able to assist counsel, despite some reservations about adequacy of counsel." On that point, Dr. Andersen noted that Chatman was still willing to cooperate "by asking questions of counsel, listening to him, giving feedback, and taking in general 'a hands-on' approach." Chatman was also able to identify the charges against him, appreciate the nature of proceedings, and "give a reasonable estimate of a range of punishments," according to Dr. Andersen. The court's acceptance of that competency finding is the issue before us. *See* Iowa Code § 812.8(1).

In reviewing the restoration decision, we begin with the presumptions and burdens under section 812.8. When the psychiatrist informed the court that Chatman was "mentally restored" the presumption of competency returned. *See State v. Snethen*, 245 N.W.2d 308, 311 (Iowa 1976). On appeal, both parties cite *Snethen* for the proposition that Chatman had the burden to prove he was not competent at the time of the restoration hearing. But our supreme court recently suggested, without analysis, that it was the State's burden to prove by a preponderance of the evidence that a defendant's "competency had been

restored" under section 812.8(5). *See State v. Veal*, 930 N.W.2d 319, 338 (Iowa 2019) ("In sum, the State carried its burden of proving by a preponderance of evidence that Veal's competency had been restored."). Regardless of which party had the burden of proof, we find the district court properly determined on January 14, 2019, that Chatman was competent to stand trial based on Dr. Andersen's comprehensive psychiatric evaluation. In finding Chatman competent to stand trial, the court permissibly relied on the psychiatrist's mental-status examination and personal observations of Chatman. *See id.* (highlighting fact that examining psychiatrist found Veal could work with his counsel).

Yet Chatman insists he remained incompetent—as revealed by his "irrational, delusional, and paranoid behaviors" at hearings on January 25 and February 21. He contends the court failed in its duty to "monitor the proceedings and ensure the defendant's due process and statutory rights related to competency are properly protected throughout the proceedings." *See State v. Einfeldt*, 914 N.W.2d 773, 783 (Iowa 2018). Chatman is correct that the court had a continuing duty to ensure his right to due process. *See* Iowa Code § 812.3(1).[3] As an offshoot, we must measure Chatman's competency from the whole record on appeal. *See State v. Pedersen*, 309 N.W.2d 490, 496 (Iowa 1981) ("In considering the totality of the circumstances in our de novo review, we turn to the two main

---

[3] That provision requires a competency hearing "at any stage of a criminal proceeding" "when the district court finds probable cause that there exist 'specific facts showing that the defendant is suffering from a mental disorder which prevents the defendant from appreciating the charge, understanding the proceedings, or assisting effectively in the defense.'" Iowa Code § 812.3(1); *Einfeldt*, 914 N.W.2d at 779.

parts of the record bearing on defendant's competency to stand trial: the views of the two psychiatrists, and defendant's utterances and conduct before, during, and after trial."). "[O]ur task is to examine the information before the trial court to determine if at the relevant time an unresolved question of the defendant's competency reasonably appeared." *State v. Kempf*, 282 N.W.2d 704, 707 (Iowa 1979).

Granted, all we have is the cold record. But still, our reading of Chatman's behavior at those hearings does not show an inability to assist in his defense.[4] True, at both hearings, Chatman complained that he was unable to communicate with defense counsel. At the January 25 hearing, Chatman received permission from the court to read a letter he wrote describing his frustrations with his case. The letter offered a clear, detailed, linear explanation of why he wanted new counsel. Chatman was upset that his attorney urged him to take a plea offer. Chatman also told the court that "this incompetency thing" was "a ploy" and his PTSD from serving in the Marine Corps had "nothing to do with [him] being incompetent or competent." At the hearing's end, the court agreed to appoint new counsel.

Admittedly, the February 21 hearing portrays a more volatile defendant. His newly appointed attorney described a "recent outburst" by Chatman as "pretty illustrative" of their conversations. Then defense counsel asked to withdraw. The

---

[4] The State recognizes that under *Einfeldt*, "Chatman's references to subsequent events could help support an argument that the trial court should have found 'circumstances suggesting a change,' requiring it to suspend proceedings again and order another competency evaluation." 914 N.W.2d at 783 (quoting *Drope v. Missouri*, 420 U.S. 162, 181 (1975)). But the State contends even that line of argument should not convince us to reverse the restoration decision.

prosecutor weighed in: "[T]his is a reoccurring problem with this specific defendant, period. We've tried the 812 route.[5] I knew he wasn't an 812. He's just a disagreeable man. It doesn't make him incompetent." When the court called on Chatman, he again complained that his attorney recommended he take a plea deal. Beyond the deal, Chatman expressed dismay that defense counsel predicted: "[W]e're going to convict your ass." Chatman asked the court: "Who talks to their clients like that?" Defense counsel acknowledged making the statement but told the court he was trying to impress upon Chatman that the State had strong evidence, and Chatman "tend[ed] to take things out of context." The court again appointed new counsel.[6]

All in all, Chatman's dissatisfaction with his first two attorneys did not signal his incompetence to stand trial.[7] An ability to assist effectively in one's defense does not require passively accepting appointed counsel's proposed strategy. *See State v. Edwards*, 507 N.W.2d 393, 396 (Iowa 1993) (finding defendant competent, though he was disruptive during trial and "left no doubt that he was going to take

---

[5] Iowa Code chapter 812 governs criminal defendants' competency to stand trial.

[6] On the first day of his March 2019 jury trial, his third attorney made a record that she presented Chatman with the plea offer from the State. Chatman confirmed that he understood the offer and rejected it.

[7] Chatman also points to his unruly conduct at sentencing that caused the judge to order his removal from the courtroom. We find Chatman's angry performance at the sentencing hearing does not counter the psychiatric assessment relied on by the court in determining Chatman's competency was restored. *See State v. Stanley*, 344 N.W.2d 564, 571 (Iowa 1983) ("The trial court was able, at the . . . sentencing proceedings, to view the defendant to aid in a determination regarding [his] competency. The record reveals no behavior on the part of Stanley which would in any way negate the psychological evaluations which were considered by the court."); *see also State v. Campbell*, No. 16-0550, 2017 WL 2464070, at *2 (Iowa Ct. App. June 7, 2017) (explaining a defendant's "odd, disruptive, and sometimes irrational behaviors" do not "equate with incompetency to stand trial").

an active role in his defense and in no uncertain terms explained why"). Suppose Chatman had waived the right to counsel and opted to represent himself. While often ill-advised, that choice is constitutionally protected and does not show incompetence to stand trial. *See generally Faretta v. California*, 422 U.S. 806, 834 (1975) ("To force a lawyer on a defendant can only lead him to believe that the law contrives against him."). Contrary to Chatman's position on appeal, nothing in the record compels us to reverse the district court's January 2019 ruling that he was competent to stand trial. On our de novo review, the record does not raise a substantial question of his competency after that ruling.

### 2. Timeliness of Restoration Hearing

Chatman also contends the district court violated the deadline set in Iowa Code section 812.8(4). That provision requires the court to schedule a hearing within fourteen days of receiving notice from a psychiatrist that "the defendant has acquired the ability to appreciate the charge, understand the proceedings, and effectively assist in the defendant's defense." Iowa Code § 812.8(1), (4). Dr. Andersen notified the court of his evaluation on November 30, 2018. The court held a hearing on January 14, 2019—forty-five days later.

The State argues Chatman did not preserve error on this procedural challenge. In reply, Chatman recognizes issues must ordinarily be raised and decided by the district court before an appellate court can review them. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). But Chatman notes appellate review is possible if the failure to raise this issue resulted from the denial of effective assistance of counsel. We will address this ineffective-assistance claim with Chatman's other complaints about trial counsel's performance.

### 3.     Chatman's Pro Se Competency Issue

In his pro se supplemental brief, Chatman claims the court violated his due process rights because "he was not present at any of his competency hearings." He asserts: "We just don't know what happened in the court room that day."

But because neither the October 12, 2018 hearing nor the January 14, 2019 hearing was reported, it is hard to verify the factual premise underlying Chatman's claims.  Plus, the court orders following those hearings cast doubt on his allegations.  The October 15 order finding defendant incompetent opens with this sentence: "On 10/12/18 the Defendant appeared in person and with counsel, attorney Tomas Rodriguez, before this Court for a hearing on the issue whether the defendant is competent to stand trial pursuant to Iowa Code Sections 812.4 and 812.5."  Less clear, the January 14 order finding Chatman competent states: "On 01/14/2019 the Defendant appeared in [stet] by counsel Tomas Rodriguez before this Court for a hearing on the issue whether the defendant is competent to stand trial pursuant to Iowa Code Sections 812.4 and 812.5."  But we glean another clue from the January 25 hearing, when the judge uttered these introductory words: "On January 14th of 2019 was the first time that I met Mr. Chatman, where we had an order reversing commitment or incompetency."  The court's statement suggests Chatman *was* present for the competency restoration hearing.

In its appellee's brief, the State appears to accept that Chatman was absent from the two unreported competency hearings.  But the State also argues that, as appellant, Chatman had the duty under Iowa Rule of Appellate Procedure 6.806 to recreate the record of the proceedings for which a transcript was unavailable.  We agree.  Chatman has no right to relief on appeal because he did not try to prepare

a statement as required by rule 6.806. *See In re T.V.*, 563 N.W.2d 612, 614 (Iowa 1997).

## B.    Ineffective Assistance of Counsel

Chatman contends his trial counsel made four critical omissions: (1) counsel did not present expert testimony or request a jury instruction on eye witness identification; (2) counsel did not object to alleged prosecutorial misconduct during closing arguments; (3) counsel did not preserve error on the court's failure to follow the timeline in Iowa Code section 812.8(4), and (4) counsel did not object to photographs of the victim "intended to inflame the passion of the jury."[8] Chatman also raises cumulative error. To succeed on these contentions, Chatman must prove two elements by a preponderance of the evidence: (1) trial counsel failed to perform an essential duty, and (2) this failure led to prejudice. *See State v. Webster*, 865 N.W.2d 223, 231 (Iowa 2015)

While we have statutory authority to decide Chatman's ineffective-assistance-of-counsel claims because his appeal preceded the July 1, 2019 effective date of Senate File 589 (amending Iowa Code section 814.7), the prudent course is to preserve them for possible postconviction-relief proceedings. *See State v. Trane*, 934 N.W.2d 447, 465 (Iowa 2019). At those proceedings, Chatman's trial counsel will have a chance to explain the defense strategy. *See id.*; *State v. Coil*, 264 N.W.2d 293, 296 (Iowa 1978) ("[A] lawyer is entitled to [her] day in court, especially when [her] professional reputation is impugned.").

---

[8] Although Chatman did not preserve error on this pro se issue, the State acknowledges Chatman "could style this as an ineffective assistance claim."

Likewise, the postconviction court can consider any cumulative effect of prejudice arising from all the claims. *See State v. Clay*, 824 N.W.2d 488, 501 (Iowa 2012).

### C.    Substantial Evidence

Chatman frames this case as a whodunit and contends the State failed to prove he was the culprit. In his pro se supplemental brief, he adds the argument that the State failed to prove he possessed a dangerous weapon, an element of first-degree robbery and first-degree burglary. But trial counsel moved for judgment of acquittal only to contest identity. Because the motion did not preserve the ground now raised by Chatman pro se, we cannot consider it for the first time on appeal. *See State v. Crone*, 545 N.W.2d 267, 270 (Iowa 1996). In his pro se supplemental reply brief, Chatman contends counsel was ineffective in failing "to object to the lack of the use of a dangerous weapon." Chatman faces another procedural roadblock; Iowa appellate courts "have long held that an issue cannot be asserted for the first time in a reply brief." *Young v. Gregg*, 480 N.W.2d 75, 78 (Iowa 1992). Thus, we turn to the only preserved substantial-evidence challenge: Whether the State proved Chatman was the assailant.

We consider evidence to be "substantial" if it can convince a rational jury that the defendant was guilty beyond a reasonable doubt. *State v. Chapman*, 944 N.W.2d 864, 871 (Iowa 2020). We view the evidence in the light most favorable to the State. *Id.* Evidence is not substantial if it only creates "speculation, suspicion, or conjecture." *Id.* "Identity is an element of a criminal offense which the State must prove beyond a reasonable doubt." *State v. Jensen*, 216 N.W.2d 369, 374 (Iowa 1974).

In his challenge to the State's proof, Chatman attacks the identifications by witnesses Everson and George. Chatman points to inconsistencies in how they described the suspect to investigators. He also highlights their hesitancy to confirm that his photograph, provided by police, depicted the same person they saw in Mandujano's apartment. At trial, Chatman offered family members as alibi witnesses to show he was not in Des Moines on the day of the crimes.

But Chatman's argument cannot carry the day. Both Everson and George identified Chatman in open court as the person they saw demanding money and threatening Mandujano with a knife. The weight of these in-court identifications "was for the jury." *See State v. Doolin*, 942 N.W.2d 500, 510–11 (Iowa 2020) (explaining jurors are "not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature"). And their identifications did not stand alone. The State offered evidence connecting Chatman to the minivan at the scene. The jury was free to credit that testimony, as well as the identifications by Everson and George, and reject his alibi testimony. *See State v. Shorter*, 893 N.W.2d 65, 74 (Iowa 2017). Finding substantial evidence, we decline to disturb the verdicts.

### D.    Sentencing

Finally, Chatman contests his sentence. The district court imposed consecutive, indeterminate terms of twenty-five years on the two felonies and one year on the misdemeanor assault—a term not to exceed fifty-one years in prison. The court also imposed a mandatory-minimum term of seventeen and one-half years on the robbery conviction. Because of that mandatory minimum, the court planned to run the felony sentences concurrently. But after hearing Chatman's

hostile and profanity-laced allocution, the court opted to impose consecutive terms. The court reasoned: "I need to consider your rehabilitation and the protection of the public. And considering the allocution that you just made, it appears to me highly unlikely that you'll ever be rehabilitated, because nothing is your fault."

Chatman first challenges the seventy-percent mandatory minimum. Chatman acknowledges that mandate complied with the law at the time of sentencing. But Chatman flags new legislation that gives the sentencing court discretion to impose a mandatory minimum between one-half and seven-tenths of the maximum term. *See* Iowa Code § 902.12(3) (2019).[9] Chatman also claims the court failed to state on the record its reason for imposing the sentence, particularly its reason for imposing consecutive terms. *See* Iowa R. Crim. P. 2.23(3)(d); *State v. Hill*, 878 N.W.2d 269, 274 (Iowa 2016). Chatman argues the reason the court *did* give for imposing consecutive terms—tied to Chatman's outbursts during the sentencing hearing—was improper.

In response, the State agrees the new provision on mandatory-minimum terms requires a remand for resentencing on the robbery conviction. *See State v. Smith-Berry*, No. 19-0839, 2020 WL 2988410, at *4 (Iowa Ct. App. June 3, 2020); *State v. Brown*, No. 18-1988, 2020 WL 1879686, at *6–7 (Iowa Ct. App. Apr. 15, 2020); *State v. Fagan*, No. 19-0492, 2020 WL 1310319, at *1–3 (Iowa Ct. App.

---

[9] Section 902.12(3) now provides:

> A person serving a sentence for a conviction for robbery in the first degree in violation of section 711.2 for a conviction that occurs on or after July 1, 2018, shall be denied parole or work release until the person has served between one-half and seven-tenths of the maximum term of the person's sentence as determined under section 901.11, subsection 2A.

Mar. 18, 2020). But the State contends the rest of the sentence was proper and should not be revisited on remand. In defense of the consecutive sentences, the State asserts the sentencing court was "not reacting to any particular breach of decorum or even to the personal attacks." Instead, the court focused on Chatman's lack of remorse, a permissible sentencing factor. *See State v. Harrison*, 914 N.W.2d 178, 204 (Iowa 2018); *State v. Knight*, 701 N.W.2d 83, 88 (Iowa 2005) ("A defendant's lack of remorse can be discerned 'by any admissible statement made by the defendant pre-trial, at trial, or post-trial,' or by 'other competent evidence properly admitted at the sentencing hearing.'" (quoting *State v. Shreves*, 60 P.3d 991, 996 (Mont. 2002)).

We agree with the State that the sentencing court offered proper reasons for imposing consecutive terms. Yet we do not find it necessary to constrain the resentencing court to the same rationale. On remand, the court may reconsider all discretionary aspects for sentencing based on the three offenses for which Chatman was convicted. *See State v. Jacobs*, 644 N.W.2d 695, 697 (Iowa 2001).

**CONVICTIONS AFFIRMED; SENTENCE VACATED AND REMANDED FOR RESENTENCING.**